UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                    Case No. 09-61250-DDO

Otter Tail AG Enterprises, LLC
                                                         Chapter 11

                Debtor.

## NOTICE OF HEARING AND MOTION FOR (I) EXPEDITED RELIEF; AND (II) INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO USE CASH COLLATERAL

1.      Otter Tail AG Enterprises, LLC ("Debtor") moves the Bankruptcy Court for expedited relief authorizing: (1) expedited relief; and (2) interim and final orders authorizing Debtor to use cash collateral.

2.      A hearing is scheduled for this motion on November 4, 2009, at 2:00 p.m. in Courtroom No. B, U.S. Courthouse, 232 Warren E. Burger Federal Bldg., 316 N Robert St, St. Paul, MN 55101.

3.      Local Rule 9006-1(b) provides that Debtor must bring this motion and serve the accompanying papers within a certain time period prior to the hearing date.  Movant requests relief from these deadlines and request the matter determined on an expedited basis.   Parties in interest may file an objection any time before the hearing.   Any response to the Motion for a final order must be filed an delivered not later than November 3, 2009, which is 24 hours before the date of hearing.  **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.     The Court's jurisdiction over this matter arises under 28 U.S.C. §§ 157 and 1334, Fed. R. Bank. P. 5005, and Local Rule 1070-1.  The matter is a core proceeding.

5.     This Motion arises under 11 U.S.C. §§ 363(c), 364(c) and (d), and Fed. R. Bankr. P. 4001(b).  This Motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 9013-1 to 9013-5 and 4001-2.

6.     Debtor requests that this Court (I) grant the request for expedited relief; and; (II) enter an interim order authorizing use of cash collateral.  Debtor also requests a final order authorizing use of cash collateral.  The grounds for this Motion are set out below.

### RULE 4001(b)(1)(B) Statement

7.     Pursuant to Fed. R. Bank. P. 4001, Debtor requests authority to use cash collateral.  Subsection (B) of Rule 4001(b)(1) sets for requirements of the motion which are set forth below.  Debtor also attaches the separate verified statement executed by Debtor's chief executive officer Anthony J. Hicks as required by Local Rule 4001-2(a).

8.     The following lenders have a security interest in Debtor's cash collateral: AgStar Financial Services ("AgStar"); MMCDC New Markets Fund II, LLC ("NMF") (collectively the "Lenders").

9.     There are holders of public bonds issued by Otter Tail County that are administered by U.S. Bank National Association as indenture trustee, and Otter Tail County (collectively the "Bondholders").  U.S. Bank National Association and Otter Tail County claim a security interest in the real property, plant and equipment of Debtor, but, as set forth in a more detailed fashion in the facts section below, the Bondholders have subordinated any right to payment or interest in any property of Debtor as collateral until the Lenders are paid-in-full on their claims.  As a result, the Bondholders are not entitled to any adequate protection to permit

Debtor's use of cash collateral.  In any event, the Bondholders position is preserved by the adequate protection given Lenders as set forth below.

10.     Debtor will use cash collateral to continue its operations and pursue a reorganization of its business.

11.     AgStar and NMF have consented to Debtor's interim and final use of cash collateral, up until February 28, 2010.  The stipulation entered into by AgStar, NMF, and Debtor is attached as Exhibit A to this motion (the "Stipulation").

12.     The material terms in the proposal to use cash collateral are as follows:

a.  Debtor acknowledges the validity, first-position priority, perfection and enforceability of the Lenders' prepetition claims and security interests (*see* Stipulation ¶ 3);

b.  Debtor grants Lenders first priority perfected security interests in all real and personal property acquired postpetition (*see* Stipulation ¶ 6)

c.  Debtor makes a re-margin payment to AgStar to reduce the $6,000,000 revolving line of credit to an amount no greater than one hundred percent (100%) of the sum of Debtor's Eligible Accounts Receivable and Eligible Inventory, as defined in the AgStar Loan Agreements (*see* Stipulation ¶ 8)

d.  Debtor shall timely make postpetition financial reports (*see* Stipulation ¶ 9)

e.  Interest shall accrue on the prepetition loans at the default rate as calculated in the prepetition loan documents (*see* Stipulation ¶ 10)

f.  Debtor shall provide all agreed-upon means of adequate protection, as identified below (*see* Stipulation ¶ 11)

g.  Debtor shall file a plan acceptable to the Lenders prior to the Cash Collateral Maturity Date, which at a minimum treats the Lenders as fully secured creditors, and provides that Debtor's manufacturing plant (the "Plant") will be free of all subordinate mortgages, liens, encumbrances, and lessors' interests, except those acceptable to the Lenders (*see* Stipulation ¶ 12)

h.  Debtor shall raise new equity for the Plant and will obtain subscription letters acceptable to the Lenders in an amount not less than (a) $6,000,000

on or before January 15, 2010; and (b) $10,000,000 on or before February 28, 2009 (*see* Stipulation ¶ 13)

i.   If Debtor cannot propose an acceptable plan for reorganization within the time frame set forth above, Debtor shall move for a sale of assets free and clear of interests, liens, encumbrances and claims pursuant to Bankruptcy Code § 363(b) and (f) (*see* Stipulation, ¶ 14)

j.   Use of cash collateral may continue so long that the Debtor's expenditures on a line item basis do not exceed 10% of the budgeted amounts, excluding the costs of input commodities (*see* Stipulation ¶¶ 4, 15(e))

k.   Debtor shall not purchase input commodities such as corn, natural gas, electricity, and other chemicals use for the production of ethanol for ten percent (10%) or more above fair market value without consent of the Lenders (*see* Stipulation ¶ 15(f)

l.   Debtor shall not reject any long term ethanol or DDG marketing agreement and fail to replace an agreement with a similar agreement acceptable to the Lenders (*see* Stipulation ¶ 15(h)

m.   The Lender can discuss Debtor's financial affairs with a potential investor but shall not attempt to negotiate a sale of the Plant prior to Debtor filing a motion to sell the Plant (*see* Stipulation ¶ 17)

n.   The U.S. Trustee and the Debtor's Professionals are entitled to a carve-out from the first priority perfected security interests of the Lender up to $75,000 if the there is no plan filed by the end of the Cash Collateral Period or no motion for a Section 363 sale.  Otherwise, Professionals are paid in accordance with the budget upon approval by the Court. (*see* Stipulation ¶ 25)

13.   The Debtor shall provide to the Prepetition Lenders the following as and for adequate protection during the term of the use of cash collateral:

a.   Grant of first priority perfected security in debtor's post-petition property (*see* Stipulation ¶ 6);

b.   Payment of accrued interest at the contract rate on the first day of each month, beginning on November 1, 2009, and monthly thereafter (*see* Stipulation ¶ 10);

c.   Maintenance of a minimum cash balance at all time through the Cash Collateral Maturity Date of $2,000,000, measured as of the close of business each Friday and included in the financial reports required herein (*see* Stipulation ¶ 11(b));

d. Payment of all taxes and assessments on all of the Collateral that become due and payable after the Petition Date, including the October 15, 2009, real estate taxes (*see* Stipulation ¶ 11(c)); and

e. Maintenance and insurance of the Collateral as required by the Prepetition Loan Documents (*see* Stipulation ¶ 11(d)).

<u>**Grounds for Expedited Relief**</u>

14.     Debtor requires use of cash collateral to continue its operations, which includes payment of wages to its employees, as well as amounts to its commodity suppliers, utility providers and vendors.  If the Court does not grant expedited relief to Debtor to use cash collateral, Debtor would need to stop its operations, which would cause irreparable harm in the form of lost employees, lost revenue, and profitability.  Even the slightest interruption in normal operating activities would cause sufficient damage to Debtor to likely defeat its attempts to successfully reorganize.  The separate verified statement of Anthony J. Hicks contains an itemization of the proposed uses of cash collateral that are required to avoid immediate and irreparable harm to the estate pending a final hearing on the motion.

<u>**PERTINENT FACTS AND BACKGROUND**</u>

15.     Debtor commenced this case by filing a petition for relief under Chapter 11 of the United States Bankruptcy Code (11 U.S.C.) on October 30, 2009 (the "Petition Date").

16.     Since the Petition Date, Debtor has operated as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.   As a Debtor-in-Possession, Debtor retained control of its assets.  Debtor's pre-petition management and board of directors continue to operate Debtor.

<u>**Background of Debtor's Operations**</u>

17.     Debtor owns and operates a starched-based (corn) ethanol manufacturing facility located at 24096 170th Ave Fergus Falls, MN 56537 (the "Real Property").   Debtor commenced operations in March, 2008.

18.     Ethanol is blended with gasoline as a motor vehicle fuel that is sold to consumers in the United States.  Ethanol production is a growing industry in the United States that is driven by policy goals of increasing use of a clean-burning fuel as well as decreasing dependence on foreign-produced oil.  There is a present capacity nationally for the production of approximately 12.4 billion gallons of ethanol.  Ethanol production is encouraged through the federal Renewable Fuel Standards ("RFS").   In 2010, the RFS mandate increases to 13 billion gallons and is scheduled to increase to 15 billion gallons by 2015.

19.     Debtor is capable of producing around 55 million gallons of ethanol per year.  In addition, Debtor also produces marketable distillers' grains from the residual mash left over from the fermentation and distillation processes.  The distillers' grains are sold as cattle feeds in dry and wet form.

20.     In its first nine months of operations, Debtor earned gross revenues of $72,276,413, but incurred significant losses due to instability in the commodities market, particularly in the price of corn.  During the summer of 2008, the industry experienced record corn prices, which in Debtor's case caused significant losses in its first year of operations.  To mitigate the rising corn costs and secure product for fiscal 2009, Debtor executed a number of forward purchase contracts to lock-in its future corn prices.  The global financial crisis that began in 2008 led to a steep reduction in commodity prices (including ethanol and corn), leaving a shortfall between the market price of corn and the amounts Debtor contracted to purchase the corn.  The market negatively impacted not only Debtor's input costs, but also its output prices.

This gave rise to a situation whereby Debtor had supply commitments that it was required to honor but could not obtain the required sales to prevent a significant loss.

21.    The market for the production of ethanol has improved beginning in the summer of 2009.  Since July 2009, Debtor has earned net income of $435,083, with EBITDA during this three-month period of approximately $3,219,954.

### Pre-Petition Debt Structure with Lenders and Bondholders

22.    Debtor has received several sources of financing, and the present principal balance of all long-term indebtedness to the Lenders and Bondholders is $80,121,704.

### a.  AgStar Financial Services.

23.    Debtor's largest secured creditor is AgStar Financial Services ("AgStar") which has three credit facilities totaling $40,806,138.

24.    AgStar provided the initial financing for purchase of the real property and construction of the ethanol plant (the "Plant").  Upon completion the construction loan converted into a Construction Term Loan totaling $29,000,000.  A portion of the Construction Term Loan, up to $6,000,000 was also converted into a Fixed Rate Loan.  The outstanding balance of the Construction Term Loan and the Fixed Rate Loan combined totals $34,806,138.

25.    Debtor also has a Revolving Line of Credit loan with AgStar for up to $6,000,000.  This line of credit is currently fully advanced.

### b.    MMCDC New Markets Fund II, LLC.

26.    In March 2007, Debtor entered into the agreement with MMCDC New Markets Fund II, LLC ("NMF") to borrow in the amount of $19,175,000. The NMF loan is divided into two portions: a term loan with an outstanding balance of $14,480,500 (the "Term Loan") and subordinated note with an outstanding balance of $4,694,500 (the "Subordinated Note").

27.     AgStar is the administrative agent of the NMF loans.

**c.      Otter Tail County Bonds and Capital Lease.**

28.     Debtor also financed the construction of its Plant and acquisition of its equipment through bonds issued by Otter Tail County.

29.     Pursuant to a certain Trust Indenture between Otter Tail County and U.S. Bank, National Association, as Trustee, the County issued Subordinate Exempt Facility Revenue Bonds Series 2007A, in the aggregate principal balance of $20,000,000, the proceeds from the sale of which were used to finance the acquisition and installation of certain equipment comprising a solid waste disposal facility at the Plant.  In April 2007, Debtor entered into a long-term lease agreement with the County for the equipment comprising the solid waste disposal facility.

30.     The County further financed the construction of Debtor's Plant through issue of General Obligation Tax Abatement Bonds Series 2007B totaling $5,245,000, and Taxable General Obligation Tax Abatement Bonds Series 2007C totaling $765,000

31.     Collectively, the Trustee and the County are referred to as the Bondholders.

32.     Debtor failed to make basic payments on the County capital lease as of December 31, 2008, which caused Debtor to default on the capital lease.  Accordingly, the capital lease has been reclassified to current maturities of long-term debt.

33.     The Lenders and Bondholders each claim security interests over Debtor's real and personal property.

34.     The Lenders and Bondholders hold the following mortgages over Debtor's Real Property:

| Recording Date | Mortgagee | Amount | Recording Information (Office of County Recorder of Otter Tail County) |
|---|---|---|---|
|  |  |  |  |

| March 30, 2007 | AgStar Financial Services, PCA | $39,000,000 | Doc. No. 1016602 |
|---|---|---|---|
| March 30, 2007 | MMCDC New Market's Fund II, LLC | $14,480,500 | Doc. No. 1016603 |
| May 3, 2007 | U.S. Bank National Association, | $20,000,000 | Doc. No. 1018511 |
| May 22, 2007 | Otter Tail County | $6,010,000 | Doc. No. 1019565 |
| June 27, 2008 | AgStar Financial Services, PCA | $41,000,000 (Amended and Restated from Doc. No. 1016602) | Doc. No. 1041045 |

35.     The Lenders also claim security interests over Debtor's personal property, including deposit accounts, cash collateral, accounts and inventory as demonstrated by the filings at the Minnesota Secretary of State's Office:

| Filing Date | Lender | Filing Number (Secretary of State Office for Minnesota) |
|---|---|---|
| March 30, 2007 | AgStar Financial Services, PCA | 200716138783 |
| March 30, 2007 | MMCDC New Market's Fund II, LLC | 200716249828 |
| May 4, 2007 | U.S. Bank National Association, | 200716648665 |

36.     In addition to the Real Property, the Bondholders claim a security interest against Debtor's buildings, structures, equipment, fixtures, improvements, building supplies and materials and personal property now or hereafter attached to, located in, placed in or necessary to the use of the improvements on the Real Property, and all leases, accounts, rents, issues, and profits with respect to the Real Property.

37.     The Bondholders do not have any present right to the collateral or payment from Debtor due to an Intercreditor Agreement and an Amended and Restated Intercreditor Agreement (collectively the "ICA") entered into between the Lenders and the Bondholders.

38.     Section 2 of ICA establishes the Lenders' priority over the Bondholders in all respects to Debtors' real and personal property collateral.

39.     Section 5 of the ICA establishes that in the event of a default by the Debtor all payments, received by any party to the ICA, shall be transferred to AgStar, and that the Bondholders shall not receive any payment or proceed from disposition of collateral until the Lenders are paid in full.

40.     Section 5.5 of the ICA further provides the consequences of Debtor's bankruptcy. In the event of a bankruptcy, Section 5.5.1 states that "the [Lenders] shall first be indefeasibly paid in full in cash before any Distribution, whether in cash, securities or other property, shall be made on account of any Subordinated Debt."

41.     Further Section 5.5.3 states, "Each Party agrees not to initiate, prosecute, or participate in any claim, action or other proceeding challenging the enforceability, validity, perfection, or priority of the Senior Debt, or any Liens and security interests security in the same."

42.     Section 2.13 of the ICA provides that AgStar is the only party under the ICA with a security interest in Debtor's (i) Accounts; (ii) Inventory; (iii) Chattel Paper; (iv) Investments; (v) Deposit Accounts; and (vi) Payment Intangibles.

43.     Section 5.9 of the ICA provides that NMF and the Bondholders cannot undertake any remedial actions against the Debtor without the consent of AgStar.

44.     Section 6 of the ICA provides that no Lender can exercise a right or remedy that would result in any material portion of Debtor's plant or facility being removed.

## USE OF CASH COLLATERAL

45.     Debtor has an immediate and ongoing need to use its cash collateral to pay the costs and expenses of operating its business.  These expenses include, among other things,

payroll, payroll taxes, payments to trade vendors for post-petition purchases, lessors of equipment, utilities and other parties that supply goods and services to Debtor.

46.     If Debtor fails to make such payments, Debtor will, for example, lose its employees and be unable to hire new employees. Consequently, Debtor will be unable to continue operations and the interest of creditors and others in this case will be irreparably harmed.

47.     As a result, Debtor seeks authorization to use the cash collateral existing as of the commencement of this case, and which the Lenders claim an interest, in order to pay expenses in accordance with the budget attached as Exhibit A.   Debtor has an immediate need to use approximately $5,720,737 between the Filing Date and the period ending the week of November 20, 2009.  Payment of these amounts is necessary to avoid immediate and irreparable harm to the Bankruptcy Estate pending a final hearing on this Motion.   Debtor anticipates entry of a final order authorizing use of cash collateral by the week ending November 20, 2009.

48.     Debtor has cash on hand and will generate cash from continuing operations. As set forth in the Budget, Debtor projects that such cash will be sufficient to fund its Chapter 11 administrative expenses, including post-petition operating expenses while maintaining a comparable level of collateral to provide adequate protection to the Lenders.

49.     Debtor's proposed use of cash collateral and adequate protection listed in paragraph 13 offer provide the Lenders and the Bondholders with adequate protection against the risk of Debtor's use of the cash.  Debtor proposes to use the cash to continue its operations until a plan or joint plan of reorganization or liquidation can be confirmed.  This will greatly enhance the value of Debtor's Estate.

50.     If Debtor is not granted authority to use cash collateral, the only alternative may be to shut down operations and place the Plant on a "hot-idle," because Debtor would be unable to timely pay employees or vendors.  Any such shut down will greatly reduce the value of the Lenders' collateral.

51.     Debtors has entered into a stipulation and agreed order with the Lenders concerning use of cash collateral, adequate protection and other related matters.  Debtor will seek approval of the stipulation without further notice or hearing pursuant to Bankruptcy Rule 4001(d)(4), and **DEBTORS HEREBY GIVE NOTICE OF INTENT TO SEEK APPROVAL OF ANY SUCH STIPULATION.**

## REQUEST FOR EXPEDITED RELIEF

52.     Debtor seeks the interim relief herein on an expedited basis, and cause exists to reduce notice of the Motion.  Debtor has given approximately two days' notice of hearing.  The Lenders and the twenty largest unsecured creditors are well aware of the Debtor's need to use cash collateral.

53.     Moreover, Debtor must have access to the cash collateral in the interim period. Among other things, Debtor scheduled to fund payroll obligations.  If Debtor fails to make such payments, Debtor may lose its employees and be unable to hire new employees.  Without the interim use of cash collateral as proposed, Debtor may be unable to continue operations, and the interests of creditors and others in these cases will be irreparably harmed.

54.     Therefore, cause exists to reduce notice of the hearing with respect to an interim order authorizing the use of cash collateral.

55.     Pursuant to Local Rule 9013-2(a), this Motion is accompanied by a memorandum of law, proposed order and proof of service.

56.     Pursuant to Local Rule 9013-2, Debtor gives notice that it may, if necessary, call Anthony Hicks, chief executive officer and authorized representative of Debtor, to testify at the hearing on the Motion regarding the facts set out herein.  Mr. Hicks' business address is 24096 170th Ave Fergus Falls, MN 56537.

WHEREFORE, Debtor moves the Court for an order granting:

A.  An expedited hearing on this Motion;

B.  Interim and final authorization to use cash collateral or approval of any agreement reached with the Lenders; and

C.  Such other and further relief as the Court deems just and equitable.

Dated: October 30, 2009

MACKALL, CROUNSE & MOORE, PLC

By:  /e/ Timothy D. Moratzka
Timothy D. Moratzka (Atty No. 75036)
Mychal A. Bruggeman (Atty No 0345489)
1400 AT&T Tower
901 Marquette Ave
Minneapolis, Minnesota  55402
Phone: (612) 305-1400
Fax: (612)305-1414

In re:   Case No. _____
         Chapter 11
         Otter Tail AG Enterprises, LLC

## VERIFICATION

I, Anthony Hicks, Chief Executive Officer of Otter Tail AG Enterprises, LLC, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                    Case No. 09-61250-DDO

Otter Tail AG Enterprises, LLC

                                                          Chapter 11

            Debtor.

**SEPARATE VERIFICATION BY ANTHONY HICKS PURSUANT TO LOCAL RULE
4001-2 IN SUPPORT OF DEBTOR'S MOTION TO USE CASH COLLATERAL ON AN
EXPEDITED BASIS**

      1.     This verification is made by Anthony Hicks, chief operating officer of Debtor

Otter Tail Ag Enterprises, LLC, under Local Rule 4001-2 in support of Debtor's motion for

interim and final use of cash collateral on an expedited basis.

      2.     Debtor's calculation of the of the amount of debt secured by the collateral it

intends to use is as follows (as of October 30, 2009):

| Lender | Description | Number | Principal |
|---|---|---|---|
| AgStar Financial Services | Construction Loan | 1158976000 | $28,806,137 |
| AgStar Financial Services | Seasonal Revolver | 1198513200 | $6,000,000 |
| AgStar Financial Services | Term Revolver | 1204034900 | $6,000,000 |
| MMCDC New Markets Fund II, LLC | Promissory Note A | 520001361 | $14,480,500 |
| MMCDC New Markets Fund II, LLC | Promissory Note B | 520001362 | $4,694,500 |
| U.S. Bank National Association as Indentured Trustee | Series 2007A | | $20,000,000 |
| Otter Tail County | Series 2007B | | $5,245,000 |
| Otter Tail County | Series 2007C | | $765,000 |
| **Total** | | | **$85,991,138** |

1

3.     In addition to these amounts, Debtor estimates that there is claimed unpaid interest owed to the Lenders and the Bondholders in the followings amounts (as of September 30, 2009:

| Lender | Contract Interest | Default Interest | Total |
|---|---|---|---|
| AgStar Financial Services | $1,046,383.34 | $466,312.85 | $1,512,696.19 |
| MMCDC New Markets Fund II, LLC | $556,192.75 | $44,816.41 | $601,009.16 |
| U.S. Bank National Association as Indentured Trustee | $1,250,000 | | $1,250,000 |
| Otter Tail County | $263,575 | | $263,575 |
| **Total** | | | **$3,627,280.35** |

4.     Thus, the approximate amount owed to the Lenders is $62,094,842.35, and the approximate amount owed to the Bondholders is $27,523,575.

5.     Debtor's collateral is composed of its real property located at 24096 170th Ave Fergus Falls, MN 56537; the buildings and ethanol manufacturing plant in including the processing equipment, fixtures, and other property used directly in Debtor's manufacturing operations, deposit accounts, accounts receivable, vehicles, office equipment, parts inventory, production based inventory and ethanol inventory:

| Assets | Estimated Value |
|---|---|
| Real Property | $13,045,200 |
| Plant and Equipment | $41,954,800 |
| Production Based Inventory (as of 9/30/2009) | $1,990,554 |
| Ethanol Inventory (as of 9/30/2009) | $526,805 |
| Parts Inventory | $403,803 |
| Motor Vehicle | $18,405 |
| Office Equipment | $141,203 |
| Prepaid Accounts and Deposits (as of 10/29/2009) | $1,117,616 |
| Cash (as of 10/28/2009) | $5,596,639 |
| Accounts Receivable (as of 10/28/2009) | $1,835,880 |
| **Total** | **$ 66,630,905** |

2

6.      Debtor's collateral will likely increase in value at the end of the Cash Collateral Period.  The fixed assets may increase in value as the investment market for ethanol plants may improve as the industry's performance improves.   In addition, the cash collateral budget projected an increase in cash $809,894 ($5,262,393 - $4,452,499) from the petition date, October 30, 2009 through the end of the Cash Collateral Period, February 28, 2010.  Debtor expects the value of the collateral will increase by at least this amount by the end of the Cash Collateral Period.

7.      Cash flow projections are attached as Exhibit A and show the following positive cash flow during the Cash Collateral Period of $809,894.

8.      Use of cash collateral is required immediately to continue regular operations.  The attached budget contemplates continuous operations, and thus Debtor has an immediate and ongoing need to use its cash collateral to pay the costs and expenses of operating its business. These expenses include, among other things, payroll, payroll taxes, payments to trade vendors for post-petition purchases, equipment leases, utilities and other parties that supply goods and services to Debtor.

9.      If Debtor fails to make such payments, Debtor will, for example, lose its employees and be unable to hire new employees. Consequently, Debtor will be unable to continue operations and the interest of creditors and others in this case will be irreparably harmed.

10.     As a result, Debtor seeks authorization to use the cash collateral existing as of the commencement of this case, and which the Lenders claim an interest, in order to pay expenses in accordance with the budget attached as Exhibit A.   Debtor has an immediate need to use

approximately $5,720,737 between the Filing Date and the period ending the week of November 20, 2009.

11.     If Debtor is not granted authority to use cash collateral, the only alternative may be to shut down operations and place the Plant on a "hot-idle," because Debtor would be unable to timely pay employees or vendors.  Any such shut down will greatly reduce the value of the Lenders' collateral.

12.     Among other things, Debtor scheduled to fund payroll obligations.  If Debtor fails to make such payments, Debtor may lose its employees and be unable to hire new employees. Without the interim use of cash collateral as proposed, Debtor may be unable to continue operations, and the interests of creditors and others in these cases will be irreparably harmed.

Dated: 10/30/09

Anthony Hicks
Chief Executive Officer

4

UNITED STATES BANKRUPTCY COURT
DISTRIC OF MINNESOTA

In re:                                                              Case No. 09-61250-DDO

Otter Tail AG Enterprises, LLC
                                                                   Chapter 11

                    Debtor.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR (I) EXPEDITED RELIEF; AND (II) INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO USE CASH COLLATERAL

Otter Tail AG Enterprises, LLC, (the "Debtor") requests that the Court enter an expedited order authorizing it on an interim and final basis to use cash collateral.

## BACKGROUND

The facts supporting the relief sought are set forth in the verified Motion. The Stipulation entered into by Debtor and its Lenders is attached to the motion as Exhibit A. The Stipulation addresses all conditions on use of cash collateral as well as all measures of adequate protection by Debtor to the Lenders and the Bondholders.

## ANALYSIS

### I.   CAUSE EXISTS TO REDUCE NOTICE OF HEARING ON THE INTERIM MOTION.

Bankruptcy Rule 4001(b) provides that a court may commence a final hearing for authority use cash collateral no earlier than 15 days after service of the motion. The rule further provides that a court may conduct a preliminary hearing before such 15-day period expires, but only authorize the use of cash collateral to the extent necessary to avoid immediate and

1

irreparable harm to the estate pending a final hearing.  Local Rule 9006-1(d) permits a party to serve moving papers on shorter than 10 days notice for cause.

Grounds exist to reduce notice of the interim hearing to authorize the use of cash collateral on a preliminary basis.  Debtor has an urgent need to use cash collateral to continue its operations uninterrupted.  A shut down of the Plant could have a significant and material negative impact on Debtor and its creditors, which would frustrate Debtor's hope of reorganization.  Debtor must meet immediate obligations such as payroll, sales taxes, payments to trade vendors, utilities and lessors of plant equipment and other machinery.  If the Debtor loses its employees, customers or vendors, the value of its Estate will diminish materially. Therefore, cause exists to reduce notice of the hearing on the interim motion.

## II.    THE COURT SHOULD AUTHORIZE THE PROPOSED USE OF CASH COLLATERAL ON AN INTERIM AND FINAL BASIS.

As a debtor-in-possession, Debtor is authorized to operate its business under Section 1108 of the Bankruptcy Code (11 U.S.C.). The Bankruptcy Code grants authority for a debtor in possession to use cash collateral only with the secured creditor's consent or if the Court, after notice and a hearing, authorizes such use under 363(c)(2). Section 363(e) of the Bankruptcy Code provides that the Court must provide the secured creditor with adequate protection of its interest upon request of the creditor. The Eighth Circuit Court of Appeals has reasoned that:

> In any given case, the Bankruptcy Court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risk to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects values as nearly as possible against risk to that value consistent with the concept of indubitable equivalence.

*In re Martin,* 761 F.2d 472, 476-77 (8th Cir. 1985).

Under *Martin*, the first step is to establish the value of the secured creditor's interest. For purposes of this Motion, and focusing on the cash collateral which is subject to the liens of the lenders, the creditor's interest is determined by what the creditor could recover if the collateral were disposed of in the most commercially reasonable manner practicable. *In re Boring*, 91 B.R. 791, 795 (Bankr. S.D. Ohio 1988); *United States v. Smithfield Estates, Inc.*, 48 B.R. 910, 912 (Bankr. D.R.I. 1985).

The Lenders have consented to the proposed use of cash collateral through February 28, 2009. In any event, use of cash collateral is warranted under the circumstances. The Lenders' interest is a first priority security interest against all property of the Debtor up to value of their debt. The amount of assets that is subject to the liens of the Lenders is approximately $66,630,905, but the Bondholders do not have security interests in the current assets of the Debtor including inventory, cash, deposit accounts or accounts receivable. The Bondholders only have a subordinate security interest in the fixed assets of Debtor, including the real property, plant, and equipment, which value totals approximately $55,000,000.

The second requirement of *Martin* requires the court to identify the risk to the secured creditor's value resulting from the debtor's request for use of cash collateral. In the instant cases, such risk would be that Debtor might fail to generate sufficient replacement cash collateral to compensate for use of existing cash collateral. In this case, that risk is minimal, as the Budget shows positive cash flow for the Debtor and its ability to make adequate protection payments to protect the Lenders against depreciation. Debtor proposes to use cash collateral to maintain its existing operations, to meet payroll and payroll taxes and to meet other operating expenses.

Moreover, Debtor proposes to use cash collateral to maintain going concern value, which inures to the benefit of the Lenders. In the event that Debtor is not authorized to use cash

collateral, the only alternative is to shut down its operations. Such a result will impair the value

of the Lenders' assets in which the Lenders have a security interest, likely precluding unsecured

creditors from receiving anything on account of their claims, and would be disruptive to the

Debtor's customers, employees, and other parties in interest.

The third requirement of *Martin* requires the Court to examine the debtor's adequate

protection proposal to determine that the proposal protects the value of the secured creditor's

interest, if any, in the cash collateral relative to the risk to such value. *See Martin*, 761 F.2d at

477. Here, Debtor proposes various forms of adequate protection that the Lenders have agreed

upon. This includes granting replacement liens on, and security interest in, the same types and

items of collateral as were subject to their lien as of the commencement of these cases. Such

replacement liens would extend to post-petition assets of the estates to the extent of cash

collateral used by Debtor. Debtor also proposes other measures of adequate protection to the

Lenders such as making interest payments at the prepetition contract rates; maintaining a

minimum cash balance of $2,000,000; financial reporting; as well as agreeing to a variety of

other conditions required by the Lenders.

These provisions also protect the Bondholders' interest, although Debtor is not required

in this case to provide any specific adequate protection to the Bondholders. The Bondholders'

interest in Debtor's collateral is entirely subordinate to the Lenders' interest due to the

Intercreditor Agreement between the Lenders and the Bondholders. Several provisions as recited

in the notice of motion demonstrate that the Bondholders have no right to payment, possession of

the collateral, or proceeds from the disposition of collateral until the Lenders are paid in full.

Most pertinent, as stated in Section 5.5.1 of the ICA, in the event of Debtor's bankruptcy, "The

[Lenders'] shall first be indefeasibly paid in full in cash before any Distribution, whether in cash,

4

securities or other property, shall be made on account of any Subordinated Debt." This section plainly provides that where, as in this case, the Lenders are not yet going to be paid in full, the Bondholders have no right to payment, and therefore have no right to receive any adequate protection payments in exchange for Debtor's use of cash collateral.

## CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court enter an order granting an expedited hearing, and approving the use of cash collateral on an interim basis, and authorizing the Debtors to use cash collateral on a final basis.

Dated: October 30, 2009                    MACKALL, CROUNSE & MOORE, PLC

By: /e/ Timothy D. Moratzka
Timothy D. Moratzka (Atty No. 75036)
Mychal A. Bruggeman (Atty No 0345489)
1400 AT&T Tower
901 Marquette Ave
Minneapolis, Minnesota  55402
Phone: (612) 305-1400
Fax: (612)305-1414

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                      Case No. 09-61250-DDO

Otter Tail AG Enterprises, LLC

                                                                    Chapter 11

              Debtor.

UNSWORN DECLARATION FOR PROOF OF SERVICE

Jinah E. Finnes, employed by Mackall, Crounse & Moore, attorney(s) licensed to practice law in this
court, with office address of 1400 AT&T Tower, 901 Marquette Avenue, Minneapolis, MN 55402-2859,
declares that on the dates set forth below, she caused the following documents:

**NOTICE OF HEARING AND MOTION FOR (I) EXPEDITED RELIEF; AND (II)
INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO USE CASH
COLLATERAL; SEPARATE VERIFICATION BY ANTHONY HICKS;
MEMORANDUM OF LAW;  PROPOSED ORDER GRANTING EXPEDITED RELIEF
AND INTERIM USE OF CASH COLLATERAL; AND PROPOSED ORDER
GRANTING FINAL USE OF CASH COLLATERAL**

to be filed electronically with the Clerk of Court through ECF.

I further certify that I caused a copy of the foregoing documents and the notice of electronic
filing to be mailed by first class mail, postage paid, to the following non-ECF participants:

SEE ATTACHED SERVICE LIST

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: October 30, 2009                         Signed: /e/ Jinah E. Finnes

1

OTTER TAIL AG ENTERPRISES, LLC
BKY NO. 09-61250-DDO

### SERVICE LIST—ALL CREDITORS

Agstar Financial Services, PCA
1921 Premier Dr
Mankato, MN 56002

Carlton Industries, LP
Attn: Accounts Receivable
PO Box 280
La Grange, TX 78945

Clark Whitmore
Maslon, Edelman, Borman & Brand
90 S 7th St, Ste 3300
Minneapolis, MN 55402-4140

Duncan Co.
425 Hoover St NE
Minneapolis, MN 55413

Hawkins, Inc.
3100 E Hennepin Ave
Minneapolis, MN 55413

Jessica Mitchell
Gray, Plant, Mooty
80 S 8th St, Ste 500
Minneapolis, MN 55402

MMCDC New Markets Fund II, LLC
119 Graystone Plaza
PO Box 623
Detroit lakes, MN 56502

Nationwide Agribusiness
Processing Ctr
PO Box 10491
Des Moines, IA 50306

Otter Tail County Bonds
520 W Fir Ave
Fergus Falls, MN 56537

Phillip L. Kunkel
Gray, Plant, Mooty, et al.
1010 W St. Germain, Ste 600
St. Cloud, MN 56301

US Bank National Association
Attn: Patricia J. Kapsch
60 Livingston Ave
St. Paul, MN 55107

Jadin C. Bragg
Boulay, Heutmaker, Zibell & Co., PLLP
7500 Flying Cloud Dr, Ste 800
Minnapolis, MN 55344

Kent Mattson
Pemberton, Sorlie, Rufer & Kershner, PLLP
110 N Mill St
Fergus Falls, MN 56537

Marti Nieland
Christianson & Associates, PLLP
302 5th St South West
Willmar, MN 56201

Todd A. Taylor
Fredrikson & Byron
200 S 6th St, Ste 4000
Minneapolis, MN 55402-1425
**As of 10/30/09**
1127413.1-JEF

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

In re:                                          Case No. 09-61250-DDO

Otter Tail AG Enterprises, LLC
                                                Chapter 11

                Debtor.

---

## ORDER GRANTING EXPEDITED RELIEF AND INTERIM USE OF CASH COLLATERAL

---

This matter came before the undersigned United States Bankruptcy Judge on the Debtor's Motion for (I) Expedited Relief, and (II) Interim and Final Orders Authorizing Debtor to Use Cash Collateral (the "Motion"). Appearances are noted on the record.

Based on the pleadings, testimony, and arguments of counsel, and having determined that the Debtors' offer of adequate protection constitutes adequate protection of the secured parties' interests under 11 U.S.C. § 361 and 363.

IT IS HEREBY ORDERED:

1.      The Debtor's Motion for expedited relief is granted.

2.      Debtor is authorized to use cash, including cash collateral, subject to the liens of AgStar Financial Services, Inc. (AgStar) and New Market Funds II (NMF) consistent with the projections attached to the Motion through and including the latter of November 30, 2009 or date of entry of an order following the final hearing on the Motion.

1

3.      The Stipulation between Debtor, AgStar, and NMF for Use of Cash Collateral and

Adequate Protection dated October 29, 2009, and filed with the Court on October 30, 2009 is

hereby approved.


Dated: _____, 2009            _____

United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                           Case No. 09-61250-DDO

Otter Tail AG Enterprises, LLC

Chapter 11

Debtor.

## ORDER GRANTING FINAL USE OF CASH COLLATERAL

This matter came before the undersigned United States Bankruptcy Judge on the Debtor's Motion for (I) Expedited Relief, and (II) Interim and Final Orders Authorizing Debtor to Use Cash Collateral (the "Motion"). Appearances are noted on the record.

Based on the pleadings, testimony, and arguments of counsel, and having determined that the Debtors' offer of adequate protection constitutes adequate protection of the secured parties' interests under 11 U.S.C. § 361 and 363.

IT IS HEREBY ORDERED:

1.      Debtor's motion for use of cash collateral is granted.

2.      Debtor is authorized to use cash, including cash collateral, subject to the liens of AgStar Financial Services, Inc. (AgStar) and New Market Funds II (NMF) consistent with the projections attached to the Motion through and including the latter of February 29, 2010.

3.      The Stipulation between Debtor, AgStar, and NMF for Use of Cash Collateral and Adequate Protection dated October 29, 2009, and filed with the Court on October 30, 2009 is hereby approved.

Dated: _____, 2009                    _____
                                              United States Bankruptcy Judge

1