UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:  Case No. 09-61250-DDO

Otter Tail AG Enterprises, LLC

Chapter 11

Debtor.

**DEBTOR'S RESPONSE TO PRELIMINARY OBJECTIONS BY (I) U.S. BANK NATIONAL ASSOCIATION, AS IDENTURE TRUSTEE, AND (II) THE AD HOC COMMITTEE OF HOLDERS OF $20,000,000 SUBORDINATE EXEMPT FACILITY REVENUE BONDS TO MOTION BY DEBTOR FOR (I) EXPEDITED RELIEF AND (II) INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO USE CASH COLLATERAL**

Debtor Otter Tail AG Enterprises, LLC, responds to the preliminary objections to its use of cash collateral filed by U.S. Bank National Association as Indenture Trustee (the "Trustee") and the Ad Hoc Committee of Holders of $20,000,000 Subordinate Exempt Facility Revenue Bonds, Series 2007A as follows.

1. U.S. Bank National Association is the Indenture Trustee for approximately $20,000,000 Subordinate Exempt Facility Revenue Bonds, Series 2007A (Otter Tail Ag Enterprises, LLC Ethanol Plant Project). The Ad Hoc Committee of Holders of $20,000,000 Subordinate Bonds represent the same group of bondholders. Debtor has identical responses to the objections filed by the Trustee and the Ad Hoc Committee (collectively the "Bondholders"), except that it additionally asserts that the Ad Hoc Committee has not presented its standing to represent the Bondholders, when that duty has previously been delegated to the Trustee.

2. As stated in Debtor's motion to use cash collateral, and as acknowledged by the Trustee on page 5 of its Objection, the Bondholders are adequately protected by receiving "a

1

replacement lien having the same scope, dignity, priority and effect as its prepetition liens to secure it against the diminution in the value of its interests in the Debtor's property.

3. As stated by the Ad Hoc Committee on page 7 of its Objections, "the purpose of adequate protection is to preserve a secured creditor's position as it exists on the petition date" *quoting In re Melson*, 44 B.R. 454, 456-57 (Bankr. D. Del. 1984). In this case, the replacement liens preserve the Bondholders' position to the extent they had prepetition security interests. To the extent the Bondholders' did not have security interests in certain pre-petition property, they do not have a claim to require adequate protection for use of that property.

4. On the petition date, the Bondholders did not have a security interest in all property of the Debtor, and any property to which the Bondholders could claim a security interest, was subordinated to the interest of Debtor's senior lender, Ag Star Financial Services. The bondholders are bound, as the Trustee admits on page 4 of its Objection, to the terms of an Amended and Restated Intercreditor Agreement (the "ICA") it entered into with Debtor's senior lender, Ag Star Financial Services. Debtor attaches a true and correct copy of the ICA as Exhibit A to this response. This ICA is dated June 4, 2008 and supersedes the agreement referred to by Bondholders.

5. Under the ICA, the Bondholders do not have any present interest in cash collateral or payment from Debtor under the ICA.

6. The cash collateral Debtor proposes using are assets in which the Bondholders did not have a pre-petition security interest. Section 2.13 of the ICA provides that AgStar is the only party under the ICA with a security interest in Debtor's (i) Accounts; (ii) Inventory; (iii) Chattel Paper; (iv) Investments; (v) Deposit Accounts; and (vi) Payment Intangibles. The Bondholders did not have a prepetition interest in this property.

7. The Bondholders claim that they are uniquely positioned in this case due to a lease they hold on specialized recycling equipment located on the plant site (the "Solid Waste Facility"). The Debtor attaches a true and correct copy of that Lease as Exhibit B. While the Bondholders claim that they have a lease on the Solid Waste Facility, the lease itself states that the "Lease is intended to be and shall be construed as a security agreement for purposes of the Uniform Commercial Code as in effect in the State of Minnesota." To the extent that this security interest on the Solid Waste Facility, or any other fixed asset of the debtor, had value for the Bondholders on the petition date, the court should grant a replacement lien to the Bondholders in that same property. This is sufficient adequate protection for the Bondholders.

8. The Bondholders are not entitled to further adequate protection, and particularly not any lease payments, as the Ad Hoc Committee asserts on page 9 of its Objection. Such payments would violate the ICA, which the Bondholders signed and are bound by.

9. Section 5 of the ICA establishes that in the event of a default by the Debtor all payments of any kind, received by any party to the ICA, shall be transferred to AgStar, and that the Bondholders shall not receive any payment or proceed from disposition of collateral until the Lenders are paid in full.

10. Section 5.5 of the ICA further provides for the consequences of Debtor's bankruptcy. In the event of a bankruptcy, Section 5.5.1 states that "the [Lenders] shall first be indefeasibly paid in full in cash before any Distribution, whether in cash, securities or other property, shall be made on account of any Subordinated Debt."

11. Further Section 5.5.3 states, "Each Party agrees not to initiate, prosecute, or participate in any claim, action or other proceeding challenging the enforceability, validity,

perfection, or priority of the Senior Debt, or any Liens and security interests security in the same."

12. Section 5.7 of the ICA provides that each party to the ICA waived any right "that it otherwise might have to require any other Party to marshal assets or to resort to Collateral in any particular order or manner."

13. Section 5.9 of the ICA provides that NMF and the Bondholders cannot undertake any remedial actions against the Debtor without the consent of AgStar.

14. Section 5.3 of the ICA provides that the Bondholders cannot accept any distribution in respect to the bond debt until AgStar has been indefeasibly paid in full.

15. Section 6 of the ICA provides that no Lender can exercise a right or remedy that would result in any material portion of Debtor's plant or facility being removed. There is no carve-out in this section to permit the Bondholders to remove the Solid Waste Facility.

16. The sum of these provisions in the ICA is that the Bondholders have no interest in the cash collateral, and that adequate protection could not constitute any payment from Debtor to the Bondholders. Moreover, while the Bondholders may have had a pre-petition security interest in certain fixed assets of the Debtor, it is not entitled to exercise any rights with respect to those assets without Ag Star's consent. The Bondholders are grasping at straws and trying to get something they already negotiated away.

17. The Bondholders' claims with respect to the Solid Waste Facility are protected through replacement liens at this stage in the bankruptcy. Whether or not the Bondholders are entitled to receive anything in a plan is not an issue properly before the court today. The Bondholders do not argue that the Debtor's use of the cash collateral and continued operations will overall not benefit the Estate.

4

The court should permit Debtor's interim and final use of cash collateral as proposed in Debtor's motion and its stipulation with its senior lenders.

Dated: November 3, 2009                    MACKALL, CROUNSE & MOORE, PLC

                                           By: /e/ Timothy D. Moratzka
                                           Timothy D. Moratzka (Atty No. 75036)
                                           Mychal A. Bruggeman (Atty No 0345489)
                                           1400 AT&T Tower
                                           901 Marquette Ave
                                           Minneapolis, Minnesota  55402
                                           Phone: (612) 305-1400
                                           Fax: (612)305-1414

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                               Case No. 09-61250-DDO

Otter Tail AG Enterprises, LLC

                                                                                                                Chapter 11

                         Debtor.

## UNSWORN DECLARATION FOR PROOF OF SERVICE

<u>Jinah E. Finnes</u>, employed by Mackall, Crounse & Moore, attorney(s) licensed to practice law in this court, with office address of 1400 AT&T Tower, 901 Marquette Avenue, Minneapolis, MN 55402-2859, declares that on the dates set forth below, she caused the following documents:

**Debtor's Response To Preliminary Objections By (i) U.S. Bank National Association, As Indenture Trustee, And (ii) The Ad Hoc Committee Of Holders Of $20,000,000 Subordinate Exempt Facility Revenue Bonds To Motion By Debtor For (i) Expedited Relief And (ii) Interim And Final Orders Authorizing Debtor To Use Cash Collateral**

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

- Michael Fadlovich    michael.fadlovich@usdoj.gov
- Phillip Kunkel    phillip.kunkel@gpmlaw.com
- Jessica A. Mitchell    jessica.mitchell@gpmlaw.com
- Timothy D. Moratzka    tdm@mcmlaw.com, ldj@mcmlaw.com
- George H Singer    gsinger@lindquist.com, lnorton@lindquist.com
- Matthew A. Swanson    matthew.swanson@leonard.com, callie.sanford@leonard.com
- Amy J Swedberg    amy.swedberg@maslon.com
- US Trustee    ustpregion12.mn.ecf@usdoj.gov
- James L. Wiant    jwiant@Rnoon.com

I further certify that I caused a copy of the foregoing documents and the notice of electronic filing to be mailed by first class mail, postage paid, to the following:

Amy J. Swedberg
Maslon Edelman Borman & Brand, LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4140

1

2

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: November 3, 2009                                          Signed: /e/ Jinah E. Finnes

1128738.1-MAB