UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

In re:

**Otter Tail Ag Enterprises, LLC**

Debtor.

Bky. Case No. 09-61250-DDO

Chapter 11

---

**FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION**

---

This matter having come before the undersigned United States Bankruptcy Judge on the Motion for (I) Expedited Relief, and (II) Interim and Final Orders Authorizing Debtor to Use Cash Collateral (the "**Motion**") of Otter Tail Ag Enterprises, LLC, a Minnesota limited liability company (the "Debtor") seeking this Court's authorization pursuant to § 363 of Title 11 of the United States Code (the "**Bankruptcy Code**") to use Cash Collateral (as defined below) and to provide adequate protection. On November 5, 2009, the Court entered an order granting expedited relief and authorizing the use of cash collateral on an interim basis [Docket No. 22] (the "**Interim Order**").

Objections having been filed by U.S. National Bank Association as indenture trustee ("**U.S. Bank**") for the holders of the Otter Tail County, Minnesota Subordinate Exempt Facility Revenue Bonds, Series 2007 (the "**Revenue Bonds**"), Otter Tail County, Minnesota (the "**County**"), and the ad hoc committee of certain holders of the revenue bonds (the "**Ad Hoc Committee**");

Based upon the record in this case and the submission of the parties, including the consent of AgStar Financial Services, PCA, a United States banking corporation ("**AgStar**") and

the consent of MMCDC New Markets Fund II, LLC, a Delaware limited liability company, ("**NMF**", and together with AgStar, the "**Prepetition Lenders**"), subject to the terms and conditions of this order to the Debtor's use of cash collateral (the "**Final Order**"), and the withdrawal of all pending objections to the Motion subject to the entry of this Final Order,

IT IS HEREBY FOUND THAT:

A. On October 30, 2009 (the "**Petition Date**"), Debtor filed a voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**"). Since the Petition Date, Debtor has operated as a debtor-in-possession pursuant to 11 U.S.C. § § 1107(a) and 1108. As a Debtor-in Possession, Debtor retained control of its assets. Debtor's Prepetition management and board of directors continue to operate Debtor.

B. This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. § § 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C. Debtor has received several sources of financing, including the Prepetition Lenders and the Bondholders.

D. In connection with obtaining AgStar's consent to the use of cash collateral to the extent set forth herein, Debtor has acknowledged that it is indebted to AgStar as evidenced by the following notes and loan documents (collectively, the "**AgStar Loan Agreements**") and all of the security, collateral and ancillary agreements and documents executed in connection with the AgStar Loan Agreements (collectively, the "**AgStar Loan Documents**"):

(1) Construction and Term Note dated March 28, 2007;

(2) an Amended and Restated Term Revolving Note dated June 23, 2008;

(3) an Amended and Restated Revolving Line of Credit Note dated June 23, 2008;

2

(4) the Master Loan Agreement dated March 28, 2007;

(5) the First Supplement to the Master Loan Agreement dated as of March 28, 2007;

(6) the Amended and Restated Master Loan Agreement dated as of June 23, 2008;

(7) the Amended and Restated Second Supplement to the Master Loan Agreement dated as of June 23, 2008; and

(8) the Second Amended and Restated Third Supplement to the Master Loan Agreement (the "**AgStar RLOC Loan**") dated as of June 23, 2008.

E.  Debtor has also acknowledged that the AgStar Loan Documents, include, in part, (1) a Mortgage, Security Agreement and Assignment of Rents and Leases dated March 28, 2007, as amended and restated by that certain Amended and Restated Mortgage, Security Agreement and Assignment of Rents and Leases dated June 23, 2008, under which AgStar has a lien in certain real property in Otter Tail County, Minnesota, as further described in the AgStar Mortgage (the "**Real Property**"); and (2) a security agreement dated March 28, 2007, providing for a security interest ("**AgStar Security Interest**") in the following property ("**AgStar Personal Property**," collectively with the Real Property, the "**AgStar Prepetition Collateral**"):

> All of the personal property of Debtor, wherever located, and now owned or hereafter acquired, including, but not limited to:
>
> All Accounts and other rights to payment whether or not earned by performance, and including, but not limited to, payment for property sold, leased, rented, licensed or assigned or services rendered or to be rendered; Goods; Farm Products; Chattel Paper; Inventory; Equipment; Instruments; Investment Property; Documents; Deposit Accounts; Commodity Accounts; Money; Letter-of-Credit Rights; General Intangibles; Payment Intangibles; Software; Supporting Obligations; and to the extent not included in the foregoing as original collateral, the proceeds and products of the foregoing.
>
> All payments, rights to payment whether or not earned by performance, accounts, general intangibles and benefits, including, but not limited to, payments in kind, deficiency payments, letters of entitlement, storage payments, emergency assistance, diversion payments, production flexibility contracts, contract reserve payments,

3

ethanol incentive funds, bioenergy programs, under or from any preexisting, current or future federal or state government program and, to the extent not included in the foregoing as original collateral, the proceeds and products of the foregoing.

F. Debtor has further acknowledged that as of the Petition Date, Debtor is indebted to NMF as evidenced by the following notes and loan documents (collectively, the "**NMF Loan Agreements**") and all of the security, collateral and ancillary agreements and documents executed in connection with the NMF Loan Agreements (collectively, the "**NMF Loan Documents**"):

(1) a Senior Loan Note dated March 30, 2007;

(2) a Subordinate Loan Note dated March 30, 2007;

(3) the Construction and Term Loan Agreement, dated as of March 30, 2007, which was executed and delivered to NMF by Debtor.

G. NMF Loan Documents, include, in part (1) a Mortgage, Security Agreement and Assignment of Rents and Leases dated March 30, 2007, under which NMF has a lien on the Real Property; and (2) a security interest (the "**NMF Security Interest**") in substantially all of the personal property of Debtor ("**NMF Personal Property**," collectively with the Real Property, the "**NMF Prepetition Collateral,**" and collectively with the AgStar Prepetition Collateral, the "**Prepetition Collateral**"), including without limitation, all goods; farm products; equipment; letter-of-credit rights; general intangibles; software; and to the extent not included in the foregoing as original collateral, the proceeds and products of the foregoing (other than accounts, inventory, chattel paper, instruments, deposit accounts and payment intangibles).

H. Pursuant to a certain Trust Indenture between the County and U.S. Bank (the "**Indenture**"), the County issued the Revenue Bonds, in the aggregate principal balance of $20,000,000, which Debtor has guaranteed.

4

I. The County further issued General Obligation Tax Abatement Bonds Series 2007B totaling $5,245,000.00, and Taxable General Obligation Tax Abatement Bonds Series 2007C totaling 765,000.

J. In addition to the Prepetition Lenders, the County and U.S. Bank each claim security interests in the Debtor's real property and certain of the personal property.

K. On June 4, 2008, AgStar, NMF, U.S. Bank and the County executed an Amended and Restated Intercreditor Agreement (the "**ICA**"). By the ICA, among other things, the parties agreed to the relative priorities of their respective security interests in the Real Property, Joint Collateral, Separate Collateral, all as defined in the ICA, and any monies or investments on deposit with U.S. Bank under the Indenture, amounts on deposit in the Reserve Fund and the Capitalized Interest Account established under the Indenture and interest or investment earnings on amounts held by the Trustee (the "**Trustee Funds**").

L. Debtor has acknowledged that as of the Petition Date, it owed AgStar the repayment of approximately $42,487,593.85 in the aggregate consisting of approximately $40,806,137.30 in principal and $1,681,456.55 in accrued and unpaid interest and fees, plus all other liabilities, obligations and indebtedness due or payable from Debtor to AgStar, which arose before the Petition Date including, without limitation any loan fees and the legal fees and expenses incurred by counsel for AgStar (collectively, the "**AgStar Prepetition Obligation**").

M. Debtor has also acknowledged that as of the Petition Date, it owed NMF approximately $19,832,821.33 in the aggregate consisting of approximately $19,175,000.00 in principal and $657,821.33 in accrued and unpaid interest and fees, plus all other liabilities, obligations and indebtedness due or payable from Debtor to NMF, which arose before the Petition Date including, without limitation any loan fees and the legal fees and expenses incurred

5

by counsel for NMF (collectively, the "**NMF Prepetition Obligation**" and collectively with the AgStar Prepetition Obligation, the "**Prepetition Loan Obligations**").

N. The Separate Collateral includes cash collateral within the meaning of 11 U.S.C. § 363(a) (the "**Cash Collateral**").

O. Debtor needs the use of Cash Collateral. In the absence of the use of Cash Collateral, the operation of Debtor's business would be disrupted and harm to Debtor and the estate would occur.

P. The terms of the Cash Collateral arrangement described herein are fair and reasonable, reflect Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and is supported by reasonably equivalent value and fair consideration.

Q. Debtor has requested entry of this Final Order pursuant to Bankruptcy Rule 4001. The permission granted herein to the use of Cash Collateral is necessary to avoid harm to Debtor. This Court concludes that entry of this Final Order is in the best interest of Debtor's estate and creditors as its implementation will, among other things, allow for the continued flow of goods and services necessary to sustain the operation of Debtor's existing business and enhance Debtor's prospects for successful reorganization.

R. Based upon the foregoing findings and conclusions, the representations contained in the Motion, and upon the record made before this Court, and good and sufficient cause appearing therefor:

IT IS HEREBY ORDERED THAT:

1. Based upon the consent of the Prepetition Lenders to entry of this Final Order and subject to the terms and conditions set forth herein, Debtor is authorized to use Cash Collateral to fund the expenses itemized in the budget attached hereto and incorporated herein as Exhibit A

(the "Budget"). Debtor's authority to use Cash Collateral is limited in that (a) actual weekly disbursements, on a line item basis, shall not, without further consent by the Prepetition Lenders, be more than ten percent (10%) in excess of the budgeted amounts, as itemized in the Budget; excluding input commodities such as corn, natural gas, electricity and other chemicals used for the production of ethanol, and (b) Debtor shall not contract to purchase input commodities such as corn, natural gas, electricity and other chemicals used for the production of ethanol for prices ten percent (10%) or more above fair market prices without the consent of the Prepetition Lenders, which consent shall not be unreasonably withheld

2.      Debtor's right to use Cash Collateral under this Order shall terminate on (i) February 28, 2010, or (ii) such earlier date as is provided herein (the "**Cash Collateral Maturity Date**").

3.      As security for the use of Cash Collateral as set forth herein and as adequate protection, AgStar shall have and is hereby granted a perfected security interest in all of the real and personal property of Debtor (the "**AgStar Adequate Protection Liens**"), whether now owned or hereafter acquired, in any collateral acquired by Debtor after the Petition Date, including all of the Debtor's postpetition Cash Collateral, (the "AgStar Postpetition Collateral," collectively with the AgStar Prepetition Collateral, the "**AgStar Collateral**"), as such property is more fully described in the AgStar Loan Documents and the ICA, which shall have the same priority, dignity and effect as AgStar's prepetition security interest and lien, without any requirement for the execution, delivery, recording or filing of any security agreement, mortgage, deed of trust, control agreement, financing statement or similar document, instrument or agreement; *provided however,* that the AgStar Adequate Protection Lien shall not extend to (i) causes of action under Chapter 5 of the Bankruptcy Code or the proceeds thereof or (ii) Trustee

7

Funds. U.S. Bank asserts that Debtor has no interest in the Trustee Funds. The AgStar Adequate Protection Lien is subject to the terms of the ICA and is limited to providing adequate protection against any diminution in AgStar's interest in the AgStar Prepetition Collateral occurring from and after the Petition Date, even if such diminution occurred prior to the date hereof. Debtor shall not grant or permit any security interest in the Collateral to any other Person, other than as set forth in this Order, liens previously granted in favor of U.S. Bank and the County or permitted liens agreed to by AgStar at any point prior to the Cash Collateral Maturity Date and in compliance with the ICA.

4. As further adequate protection, AgStar shall be entitled to an administrative expense as allowed under Section 507(b) of the Bankruptcy Code.

5. Upon the entry of this Final Order, Debtor shall pay to AgStar an amount equal to the lesser of $653,618 or the amount necessary to reduce the AgStar RLOC Loan to an amount no greater than one hundred percent (100%) of the sum of Debtor's Eligible Accounts Receivable and Eligible Inventory as of such date, as defined in the AgStar Loan Agreements (the "**Re-Margin Payment**").

6. Upon the entry of this Final Order, and in addition to the Re-Margin Payment paid to AgStar, Debtor shall pay to the Prepetition Lenders an amount equal to accrued interest at the nondefault rate of interest set forth in the AgStar Loan Documents and the NMF Loan Documents, for the months of September and October.

7. So long as Debtor is utilizing Cash Collateral, Debtor shall, unless AgStar shall otherwise consent in advance in writing, submit to the Prepetition Lenders, U.S. Bank and the County, the following: (a) all reports required to be delivered by Debtor under Section 5.01(c) of the Master Loan Agreement; (b) all reports filed with the United States Trustee in Debtor's Case;

8

(c) by 5:00 p.m. (Central Time) on Thursday of each week, a weekly report comparing on a line item basis budgeted amounts, as itemized in the Budget, to actual amounts disbursed during the preceding week; (d) by 5:00 p.m. (Central Time) on Thursday of each week, a weekly report itemizing all expenditures during the preceding week for each of the following: (i) Corn; (ii) Denaturant; (iii) Chemicals; (iv) Natural gas; (v) Electricity; (vi) Water; (vii) Transportation; (viii) Rail car lease payments; (ix) Fixed and variable terminal fees; (x) Plant overhead (non-labor); (xi) Payroll; (xii) Excise and sales taxes remitted; (xiii) Insurance; (xiv) Severance; and (xv) All other expenses; and (e) by 5:00 p.m. (Central Time) on Thursday of each week, its certification of the ledger balance of all deposit accounts of Debtor as of the close of business on the immediately preceding Friday; and (xvi) all other financial information reasonably requested.

8. Interest shall accrue on the AgStar Prepetition Loan Obligations and the NMF Prepetition Loan Obligations as provided by the AgStar Loan Documents and the NMF Loan Documents to the extent set forth in 11 U.S.C. 506 (b) and, subject to the Bankruptcy Code, shall be calculated in the manner set forth in such agreements.

9. Debtor shall provide to the Prepetition Lenders the following as and for additional adequate protection during the term of this Final Order: (a) accrued interest at the nondefault rate of interest set forth in the AgStar Loan Documents and the NMF Loan Documents, for the prior month on the Prepetition Loans shall be paid by Debtor to the Prepetition Lenders on the first day of each month, beginning on December 1, 2009, and monthly thereafter, through the Cash Collateral Maturity Date in the amounts set forth in the Budget and other sums paid in connection with this Final Order (the "**Adequate Protection Payments**"); *provided, however*, that the rights of all interested parties to later assert that the Adequate Protection Payments should be re-allocated to principal in accordance with § 506 of the Bankruptcy Code are

9

preserved; (b) Debtor shall maintain a minimum cash balance at all time through the Cash Collateral Maturity Date of $2,000,000.00, measured as of the close of business each Friday and included in the financial reports required herein; (c) Debtor shall provide the Prepetition Lenders with the financial and operating reports set forth herein; and (d) Debtor shall maintain all of the Collateral as required by the Prepetition Loan Documents and shall provide proof of insurance as required by the Prepetition Loan Documents to the Prepetition Lenders.

10. As adequate protection against any diminution in the interest of NMF, U.S. Bank and the County in the Prepetition Collateral occurring from and after the Petition Date, even if such diminution occurred prior to the date hereof, NMF, U.S. Bank, and the County shall have and are each hereby granted a perfected security interest in all of the real and personal property of Debtor (the "**Adequate Protection Liens**"), whether now owned or hereafter acquired, in any collateral acquired by Debtor after the Petition Date, (the "Postpetition Collateral**,**" collectively with the Prepetition Collateral, the "**Collateral**"), as such property is more fully described in the their respective loan documents and agreements with the Debtor and as modified by the ICA, which shall have the same priority, dignity and effect as the prepetition security interests and liens of NMF, U.S. Bank and the County, without any requirement for the execution, delivery, recording or filing of any security agreement, mortgage, deed of trust, control agreement, financing statement or similar document, instrument or agreement; *provided however,* that the Adequate Protection Liens shall not extend to (i) causes of action under Chapter 5 of the Bankruptcy Code or the proceeds thereof; (ii) the Separate Collateral; and (iii) the Trustee Funds. U.S. Bank asserts that the Debtor holds no interest in the Trustee Funds. The Adequate Protection Liens are subject to the terms of the ICA and are limited to providing adequate protection against any diminution in the interest of NMF, U.S. Bank and the County in the

10

Prepetition Collateral occurring from and after the Petition Date, even if such diminution occurred prior to the date hereof.

11. Each of the following shall (except as AgStar may otherwise agree in writing in its sole discretion) be Events of Default (each, an "**Event of Default**") terminating at AgStar's option its consent to Debtor's use of Cash Collateral and the Debtor's authorization under this Final Order: (a) Debtor's failure to comply with the terms and conditions set forth in this Final Order; (b) Debtor rejects any long term ethanol or DDG marketing agreement, and fails to replace such agreement with a similar agreement acceptable to AgStar; (c) the appointment of a trustee or an examiner with expanded powers in the Chapter 11 Case; (d) Debtor seeks an order dismissing the Case without the consent of AgStar prior to the payment in full in cash of all obligations and indebtedness owing to the Prepetition Lenders; (e) this Final Order or any subsection or portion thereof, shall be vacated, reversed or modified; (f) the automatic stay is terminated with respect to any other party permitting that party to proceed against all or any part of the Collateral, which the Prepetition Lenders determine in their sole discretion to have an adverse impact on Debtor's business or Debtor's bankruptcy estate (the "**Estate**") or the Prepetition Lenders; (g) the Chapter 11 Case shall be converted to a case under Chapter 7 of the Bankruptcy Code; (h) any party in interest shall file an adversary proceeding or commence a contested matter challenging the amount, validity, enforceability, perfection or priority of the Prepetition Loan Obligations or the liens and security interests of the Prepetition Lenders on the Collateral; and (i) Debtor's failure to file a plan of reorganization on or before the Cash Collateral Maturity Date.

12. Immediately upon the occurrence of an Event of Default, (a) AgStar shall be entitled to revoke any prior consent to the use of Cash Collateral as contemplated herein; and (b)

11

the Prepetition Lenders, or either of them individually, shall be authorized to file a motion seeking relief from the automatic stay and/or any and all other remedies permitted under the Bankruptcy Code.

13. AgStar's security interest in the AgStar Postpetition Collateral shall be subject to payment of the Limited Carve-Out not to exceed $75,000 (the "**Limited Carve-Out**"). The Limited Carve-Out may only be used for the payment of the allowed fees and expenses of the U.S. Trustee's office and professionals retained pursuant to Bankruptcy Code § 327 or 1103(a) by Debtor or any statutory committee appointed in this Case (collectively the "**Professionals**"). Prior to the Carve-Out Date, to the extent detailed in the Budget and subject to the entry of an appropriate order of the Bankruptcy Court, Debtor shall be entitled to use the Cash Collateral to pay the allowed fees and expenses of Professionals, except to the extent such fees and expenses are incurred in prosecuting claims against the Prepetition Lenders or any in seeking to invalidate, challenge, dispute, avoid, subordinate, hinder, delay or otherwise attempt to prevent the enforcement by the Prepetition Lenders of its claims or liens or realization upon the Collateral. The Limited Carve-Out shall not be reduced by the amount of allowed fees and expenses accrued, incurred, awarded or paid to Professionals prior to the occurrence of the Carve-Out Date. On the date earlier of (a) Debtor's receipt of written notice of an Event of Default from AgStar withdrawing the authorization to use the Cash Collateral or (b) within ten days of the Cash Collateral Maturity Date if no acceptable Plan has been filed and no sales motion has been filed (the "**Carve-Out Date**"), any amounts subsequently paid to Professionals by any means will reduce the Limited-Carve Out on a dollar-for-dollar basis.

14. Notwithstanding any of the provisions of this Final Order, the Prepetition Loan Documents and the ICA shall remain in full force and effect with respect to the Prepetition Loan

Obligations. To the extent there exists any conflict between the Motion, Prepetition Loan Documents and this Final Order, this Final Order shall govern and control.

15. The automatic stay of § 362 of the Bankruptcy Code is hereby modified with respect to the Prepetition Lenders to the extent necessary to effectuate the provisions of this Final Order.

Dated at St. Paul, Minnesota
December 3, 2009


/e/ Dennis D. O'Brien
_____
Dennis D. O'Brien
UNITED STATES BANKRUPTCY JUDGE

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *12/03/2009*
Lori Vosejpka, Clerk, By DLR, Deputy Clerk

# **EXHIBIT A**

# **BUDGET OF INCOME AND EXPENSES**

GP:2673549 v4

Otter Tail Ag Enterprises, LLC
Weekly Cash-flow Statement

| | ACTUALS | | | | | | | | | ACTUALS | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending: | 6-Sep | 13-Sep | 20-Sep | 27-Sep | 4-Oct | 11-Oct | 18-Oct | 25-Oct | 1-Nov | 8-Nov | 15-Nov | 22-Nov | 29-Nov |
| Working Days | 7 | 6 | 7 | 7 | 5 | 7 | 7 | 7 | 7 | 6 | 7 | 7 | 7 |
| Opening Balance | 2,493,409 | 2,482,027 | 2,417,157 | 3,001,722 | 3,308,479 | 3,781,074 | 3,552,985 | 4,476,349 | 4,729,063 | 4,902,501 | 5,506,085 | 5,788,698 | 6,727,466 |
| Wires/ACH in | | | | | | | | | | | | | |
| RPMG | 1,491,654 | 1,258,099 | 2,007,263 | 1,474,239 | 1,455,103 | 1,394,811 | 2,292,964 | 1,825,902 | 1,739,066 | 1,683,707 | 1,736,405 | 2,887,819 | 1,887,819 |
| CHS | 130,831 | 170,919 | 190,052 | 221,411 | 176,144 | 239,073 | 244,027 | 291,283 | 135,730 | 210,946 | 223,216 | 252,731 | 252,731 |
| Wet Cake | 10,026 | 19,067 | 20,771 | 9,898 | 17,322 | 11,520 | 10,178 | 12,826 | 4,942 | 13,352 | 2,602 | 30,143 | 30,143 |
| Other Checks in | 1,155 | 1,684 | 366 | 75 | 321 | 1,030 | 3,265 | 468 | 614 | 9,499 | 50,317 | | |
| Sub Total | 4,127,075 | 3,931,796 | 4,635,609 | 4,707,346 | 4,957,369 | 5,427,508 | 6,103,420 | 6,606,829 | 6,609,414 | 6,820,005 | 7,518,625 | 8,959,390 | 8,898,159 |
| Denaturant | 32,222 | | 63,105 | 32,146 | 32,047 | 48,851 | 30,704 | 65,880 | 94,168 | 38,056 | 57,083 | 49,545 | 49,545 |
| Chemicals/Ingredients | 63,820 | 179,186 | 23,694 | 33,919 | 37,079 | 22,631 | 166,187 | 117,128 | 13,717 | 91,091 | 50,206 | 82,695 | 82,695 |
| Electricity | | 147,664 | | 100,663 | | 300,289 | | 92,682 | | 98,118 | | 100,000 | |
| Payroll/Benefits | 1,970 | 100,000 | 13,413 | 56,743 | 55,755 | 9,819 | 55,331 | 19,503 | 65,909 | | 55,331 | 30,000 | 60,000 |
| Natural Gas | 119,291 | 119,291 | 143,024 | 15,525 | 120,449 | 151,263 | 151,263 | 187,434 | 167,617 | 197,946 | 197,946 | 205,984 | 245,984 |
| Corn payments | 1,330,000 | 940,000 | 1,270,000 | 1,130,000 | 885,000 | 1,240,000 | 1,095,000 | 1,250,000 | 1,140,000 | 870,000 | 1,350,000 | 1,624,700 | 1,624,700 |
| Insurance/Taxes/Permits | | | | | 25,393 | 36,283 | 1,440 | | 25,393 | | | | |
| R&M/Supplies | 84,586 | 19,114 | 43,615 | 21,542 | 1,971 | 16,108 | 45,900 | 53,817 | 57,093 | 14,356 | 16,024 | 65,000 | 17,000 |
| Marketing/Filing fees | | | | | | | | | | | | | 40,483 |
| Professional fees | | 2,411 | 22,787 | 8,129 | 14,000 | 1,778 | 76,387 | 89,511 | 124,600 | | | 69,000 | 71,000 |
| Interest/BB paydown | | | | | | | | | | | | | 1,176,982 |
| Consultant | | | | | | | | | | | | | |
| Leases/Rental | | 4,456 | 48,767 | | 3,472 | 41,943 | | | 10,272 | | | 0 | 16,272 |
| Miscellaneous | 13,159 | 2,517 | 5,482 | 200 | 1,130 | 5,558 | 4,858 | 1,812 | 8,145 | 4,353 | 3,337 | 5,000 | 5,000 |
| Sub Total | 1,645,048 | 1,514,639 | 1,633,887 | 1,398,866 | 1,176,295 | 1,874,523 | 1,627,070 | 1,877,766 | 1,706,913 | 1,313,920 | 1,729,928 | 2,231,924 | 3,389,660 |
| End Balance | 2,482,027 | 2,417,157 | 3,001,722 | 3,308,479 | 3,781,074 | 3,552,985 | 4,476,349 | 4,729,063 | 4,902,501 | 5,506,085 | 5,788,698 | 6,727,466 | 5,508,499 |
| Weekly Cash Position | -11,382 | -64,870 | 584,565 | 306,757 | 472,595 | -228,089 | 923,364 | 252,713 | 173,439 | 603,584 | 282,612 | 938,768 | -1,218,968 |
| Average $/bu | $ 3.34 | $ 2.90 | $ 3.08 | $ 2.86 | $ 3.28 | $ 3.31 | $ 3.53 | $ 3.47 | $ 3.55 | $ 3.35 | $ 3.60 | $ 4.22 | $ 4.22 |
| Total Bushels | 398,442 | 324,013 | 412,537 | 394,763 | 269,748 | 374,599 | 310,105 | 360,447 | 321,148 | 259,749 | 374,936 | 385,000 | 385,000 |
| Gallons per bushel | 2.50 | 2.47 | 3.12 | 2.77 | 3.04 | 3.07 | 3.39 | 2.91 | 3.38 | 3.75 | 2.47 | 2.79 | 2.79 |
| Number of Etoh gallons | 994,407 | 801,100 | 1,285,655 | 1,093,075 | 820,246 | 1,150,765 | 1,049,928 | 1,049,399 | 1,085,206 | 973,310 | 926,640 | 1,074,150 | 1,074,150 |
| Ethanol price per gallon | $ 1.57 | $ 1.57 | $ 1.57 | $ 1.57 | $ 1.87 | $ 1.87 | $ 1.87 | $ 1.87 | $ 1.87 | $ 1.90 | $ 1.90 | $ 1.90 | 1.90 |
| Advance Rate | | | | | | | | | | $ 1.76 | $ 1.76 | $ 1.76 | 1.76 |
| RPMG Proj/CBOT | | | | | | | | | | $ 2.02 | $ 2.02 | $ 2.02 | 2.02 |
| Basis | | | | | | | | | | $ (0.12) | $ (0.12) | $ (0.12) | (0.12) |
| Natural gas | $ 4.27 | $ 4.27 | $ 4.27 | $ 4.27 | $ 4.31 | $ 4.31 | $ 4.31 | $ 4.31 | $ 4.31 | $ 6.28 | $ 6.28 | $ 6.28 | 6.28 |
| Transportation | | | | | | | | | | $ 0.51 | $ 0.51 | $ 0.51 | 0.51 |
| NYMEX | | | | | | | | | | $ 5.77 | $ 5.77 | $ 5.77 | 5.77 |
| Natural Gas (use) | | | | | | | | | | 32,800 | 32,800 | 32,800 | 32,800 |
| DDGS (tons) | | | | | | | | | | 1,616 | 2,333 | 2,396 | 2,396 |
| DDGS $/ton | $ 70.31 | $ 70.31 | $ 70.31 | $ 70.31 | $ 82.73 | $ 82.73 | $ 82.73 | $ 82.73 | $ 82.73 | $ 83.73 | $ 90.02 | $ 105.50 | 105.50 |
| % of Corn | | | | | | | | | | 70% | 70% | 70% | 70% |
| Ton of corn | | | | | | | | | | $ 120 | $ 129 | $ 151 | 151 |
| WDGS $/ton | $ 21.27 | $ 21.27 | $ 21.27 | $ 21.27 | $ 21.51 | $ 21.51 | $ 21.51 | $ 21.51 | $ 21.51 | $ 23.92 | $ 25.72 | $ 30.14 | 30.14 |
| % of Corn | | | | | | | | | | 20% | 20% | 20% | 20% |
| WDGS (tons) | | | | | | | | | | 857 | 1,000 | 1,000 | 1,000 |

| 6-Dec | 13-Dec | 20-Dec | 27-Dec | 3-Jan | 10-Jan | 17-Jan | 24-Jan | 31-Jan | 7-Feb | 14-Feb | 21-Feb | 28-Feb | | Total's |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7 | 6 | 7 | 7 | 6 | 7 | 7 | 7 | 6 | 7 | 7 | 7 | 6 | | |
| 5,508,499 | 5,362,851 | 5,273,852 | 5,690,023 | 5,379,286 | 5,127,291 | 5,071,444 | 5,415,244 | 5,317,597 | 4,882,037 | 4,713,987 | 4,545,136 | 5,065,497 | | |
| | | | | | | | | | | | | 568,337 | $ | 568,336.60 |
| 1,818,267 | 1,558,515 | 2,395,143 | 1,818,267 | 1,567,031 | 1,828,203 | 2,396,851 | 1,828,203 | 1,567,031 | 1,817,274 | 1,817,274 | 2,516,085 | 1,557,663 | $ | 47,620,658.57 |
| 252,731 | 216,627 | 252,731 | 262,313 | 224,840 | 262,313 | 262,313 | 262,313 | 224,840 | 262,313 | 262,313 | 262,313 | 224,840 | $ | 5,971,895.86 |
| 30,143 | 25,837 | 30,143 | 31,286 | 26,816 | 31,286 | 31,286 | 31,286 | 26,816 | 31,286 | 31,286 | 31,286 | 26,816 | $ | 578,361.40 |
| | | | | | | | | | | | | | $ | 68,795.67 |
| 7,609,640 | 7,163,829 | 7,951,869 | 7,801,890 | 7,197,974 | 7,249,094 | 7,761,894 | 7,537,046 | 7,136,284 | 6,992,910 | 6,824,860 | 7,354,820 | 7,443,153 | $ | 54,808,048.11 |
| 54,379 | 46,610 | 54,379 | 54,379 | 48,061 | 56,071 | 56,071 | 56,071 | 48,061 | 60,904 | 60,904 | 60,904 | 52,204 | $ | 1,302,348.85 |
| 82,695 | 82,695 | 82,695 | 82,695 | 82,695 | 82,695 | 82,695 | 82,695 | 82,695 | 82,695 | 82,695 | 82,695 | 82,695 | $ | 2,039,082.64 |
| 100,000 | | 100,000 | | 100,000 | | 100,000 | | 100,000 | | 100,000 | | 100,000 | $ | 1,539,415.60 |
| 30,000 | 60,000 | 30,000 | 60,000 | 30,000 | 60,000 | 30,000 | 60,000 | 30,000 | 60,000 | 30,000 | 60,000 | 30,000 | $ | 1,093,772.76 |
| 261,072 | 261,072 | 261,072 | 261,072 | 270,584 | 270,584 | 270,584 | 270,584 | 230,584 | 265,024 | 297,824 | 330,624 | 363,424 | $ | 5,637,120.67 |
| 1,624,700 | 1,392,600 | 1,624,700 | 1,686,300 | 1,445,400 | 1,686,300 | 1,686,300 | 1,686,300 | 1,445,400 | 1,686,300 | 1,686,300 | 1,686,300 | 1,445,400 | $ | 36,531,700.00 |
| | | 15,000 | 10,000 | | | | | 15,000 | | | | | $ | 128,508.16 |
| 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | $ | 677,126.53 |
| | | | 41,432 | | | | | 20,000 | 50,639 | | 10,000 | 50,639 | $ | 213,191.00 |
| 0 | 25,000 | 69,000 | 20,000 | 0 | 0 | 69,000 | 0 | 25,000 | 69,000 | 0 | 0 | 69,000 | $ | 825,603.32 |
| | | 174,455 | | | | | | | 174,455 | | | 174,455 | $ | 1,700,345.71 |
| 30,000 | | | | 30,000 | | 30,000 | | | | 30,000 | | 30,000 | $ | 150,000.00 |
| 41,943 | 0 | 3,000 | 10,272 | 41,943 | 0 | 0 | 6,800 | 45,415 | 3,000 | 0 | 6,800 | 3,472 | $ | 287,824.41 |
| 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | $ | 125,551.56 |
| 2,246,789 | 1,889,977 | 2,261,846 | 2,422,604 | 2,070,683 | 2,177,650 | 2,346,650 | 2,219,450 | 2,254,247 | 2,278,923 | 2,279,723 | 2,289,323 | 2,393,287 | $ | 52,251,591.21 |
| 5,362,851 | 5,273,852 | 5,690,023 | 5,379,286 | 5,127,291 | 5,071,444 | 5,415,244 | 5,317,597 | 4,882,037 | 4,713,987 | 4,545,136 | 5,065,497 | 5,049,866 | $ | 5,049,865.90 |
| -145,647 | -88,999 | 416,171 | -310,737 | -251,995 | -55,847 | 343,800 | -97,647 | -435,560 | -168,050 | -168,850 | 520,361 | -15,631 | | |
| $ 4.22 | $ 4.22 | $ 4.22 | $ 4.38 | $ 4.38 | $ 4.38 | $ 4.38 | $ 4.38 | $ 4.38 | $ 4.38 | $ 4.38 | $ 4.38 | $ 4.38 | $ | 3.90 |
| 385,000 | 330,000 | 385,000 | 385,000 | 330,000 | 385,000 | 385,000 | 385,000 | 330,000 | 385,000 | 385,000 | 385,000 | 330,000 | | 9,355,487 |
| 2.79 | 2.79 | 2.79 | 2.79 | 2.79 | 2.79 | 2.79 | 2.79 | 2.79 | 2.79 | 2.79 | 2.79 | 2.79 | | |
| 1,074,150 | 920,700 | 1,074,150 | 1,074,150 | 920,700 | 1,074,150 | 1,074,150 | 1,074,150 | 920,700 | 1,074,150 | 1,074,150 | 1,074,150 | 920,700 | | |
| $ 1.83 | $ 1.83 | $ 1.83 | $ 1.83 | $ 1.84 | $ 1.84 | $ 1.84 | $ 1.84 | $ 1.84 | $ 1.83 | $ 1.83 | $ 1.83 | $ 1.83 | | |
| $ 1.69 | $ 1.69 | $ 1.69 | $ 1.69 | $ 1.70 | $ 1.70 | $ 1.70 | $ 1.70 | $ 1.70 | $ 1.69 | $ 1.69 | $ 1.69 | $ 1.69 | | |
| $ 1.95 | $ 1.95 | $ 1.95 | $ 1.95 | $ 1.96 | $ 1.96 | $ 1.96 | $ 1.96 | $ 1.96 | $ 1.95 | $ 1.95 | $ 1.95 | $ 1.95 | | |
| $ (0.12) | $ (0.12) | $ (0.12) | $ (0.12) | $ (0.12) | $ (0.12) | $ (0.12) | $ (0.12) | $ (0.12) | $ (0.12) | $ (0.12) | $ (0.12) | $ (0.12) | | |
| $ 6.74 | $ 6.74 | $ 6.74 | $ 6.74 | $ 7.03 | $ 7.03 | $ 7.03 | $ 7.03 | $ 7.03 | $ 8.08 | $ 9.08 | $ 10.08 | $ 11.08 | | |
| $ 0.51 | $ 0.51 | $ 0.51 | $ 0.51 | $ 0.51 | $ 0.51 | $ 0.51 | $ 0.51 | $ 0.51 | $ 1.51 | $ 2.51 | $ 3.51 | $ 4.51 | | |
| $ 6.23 | $ 6.23 | $ 6.23 | $ 6.23 | $ 6.52 | $ 6.52 | $ 6.52 | $ 6.52 | $ 6.52 | $ 6.57 | $ 6.57 | $ 6.57 | $ 6.57 | | |
| 32,800 | 32,800 | 32,800 | 32,800 | 32,800 | 32,800 | 32,800 | 32,800 | 32,800 | 32,800 | 32,800 | 32,800 | 32,800 | | |
| 2,396 | 2,053 | 2,396 | 2,396 | 2,053 | 2,396 | 2,396 | 2,396 | 2,053 | 2,396 | 2,396 | 2,396 | 2,053 | | |
| $ 105.50 | $ 105.50 | $ 105.50 | $ 109.50 | $ 109.50 | $ 109.50 | $ 109.50 | $ 109.50 | $ 109.50 | $ 109.50 | $ 109.50 | $ 109.50 | $ 109.50 | | |
| 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% | | |
| $ 151 | $ 151 | $ 151 | $ 156 | $ 156 | $ 156 | $ 156 | $ 156 | $ 156 | $ 156 | $ 156 | $ 156 | $ 156 | | |
| $ 30.14 | $ 30.14 | $ 30.14 | $ 31.29 | $ 31.29 | $ 31.29 | $ 31.29 | $ 31.29 | $ 31.29 | $ 31.29 | $ 31.29 | $ 31.29 | $ 31.29 | | |
| 20% | 20% | 20% | 20% | 20% | 20% | 20% | 20% | 20% | 20% | 20% | 20% | 20% | | |
| 1,000 | 857 | 1,000 | 1,000 | 857 | 1,000 | 1,000 | 1,000 | 857 | 1,000 | 1,000 | 1,000 | 857 | | |