UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                                Case No. 09-61250

Otter Tail Ag Enterprises, LLC,
                                                                      Chapter 11
            Debtor.

**ORDER (I) AUTHORIZING DEBTOR, TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES TO BUYER IN ACCORDANCE WITH ASSET PURCHASE AGREEMENT; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OR REJECTION OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS; AND (III) GRANTING OTHER AND FURTHER RELIEF**

The Sale Motion of above-referenced Debtor for an Order: (I) Approving Form of Asset Purchase Agreement and Designating Stalking Horse Bid; (II) Approving Break-Up Fee and Expense Reimbursement; (III) Approving Bidding and Auction Procedures (IV) Authorizing Debtor to Sell Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; (V) Approving the Solid Waste Agreement relating to the sale of the Debtor's Solid Waste Facilities (on an expedited basis); (VI) Authorizing Assumption and Assignment or Rejection of Unexpired Leases and Executory Contracts; (VII) Approving Form and Notice of Sale; and (VIII) Scheduling Further Sale Hearing (the "Sale Motion").[1] came before the undersigned on January 27, 2011, and this Court entered its Order dated January 27, 2011 approving the Motion (the "Sale Procedure Order.")

In accordance with the 363 Sale Order and the Bidding Procedures approved therein by the Court, the Debtor now, having followed said Bidding Procedures, has sought in a subsequent hearing held on February 17, 2010, final authority by this court order to sell its assets to the

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Asset Purchase Agreement, the Sale motion and/or the Bidding Procedures, as applicable, unless the context requires otherwise.

Prevailing Bidder and to distribute certain proceeds thereof and assets of the estate in accordance with the 363 Sale Order and the agreement approved thereby.

Based on the Sale Motion, the 363 Sale Order, the arguments of counsel, all the files, records and proceedings herein, including the Affidavit of Christopher Wu, the Court being advised in the premises, and for those reasons stated orally and recorded in open court following the close of evidence:

**IT IS HEREBY FOUND THAT:**

A.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 1070-1.

B.    Venue of this case ("Chapter 11 Case") in this district is proper pursuant to 28 U.S.C. § 1409(a).

C.    Approval of the Sale is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N). The statutory predicates for the relief requested herein are Sections 105(a), 363(b), (f), and (m), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

D.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

E.    Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that (i) time is of the essence; (ii) there is no just reason for delay in the implementation of this Order; and (iii) the Court expressly directs entry of judgment as set forth herein.[2]

F.    An initial hearing (the "Sale Procedures Hearing") on the Sale Motion was held by this Court on January 27, 2011, and, on that date, the Court entered the Sales Procedure Order.

---

[2] Findings of Fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Bankruptcy Rule 7052.

G.      The Debtor and OTAV LLC, a wholly owned subsidiary of Green Plains Renewable Energy, Inc., (collectively, "Buyer") have complied with the Sale Procedures Order in all respects.

H.      Pursuant to the Sale Procedures Order, the Debtor received no further Qualified Bids on or before February 11, 2011, and therefore did not hold an Auction as previously scheduled on February 16, 2011.  The Sale Procedures Order set February 17, 2011 as the date of the hearing ("Sale Approval Hearing") for an order to approve the Sale ("Sale Approval Order").

I.      Sufficient notice of this Motion has been given in compliance with Local Rule 9013-3(a)(2) has been given to: (i) the United State Trustee; (ii) counsel for the Potentially Secured Parties; (iii) the SEC; (iv) the United States Attorneys' Office for the District of Minnesota and the Department of Justice in Washington, D.C.; (v) the Internal Revenue Service; (vi) all relevant federal, state and local taxing authorities at their statutory addresses; (vii) all parties who have filed a request for service of all pleadings pursuant to and in accordance with Bankruptcy Rule 2002 as of the day prior to service of the Motion; (viii) Buyer; (ix) all non-Debtor parties to executory contracts, unexpired leases, and other agreements with the Debtor (entered into before or after the Petition Date; (x) all known creditors of the Debtor.[3]

J.      On January 7, 2011, the Debtor filed the Sale Motion and served copies of the Sale Motion in material compliance with Local Rule 9013-3(a)(2).  On January 28, 2011, Debtor served the Notice of Sale and Bidding Procedures in material compliance with the Sale Procedures Order.  On February 1, 2011, the Debtor served Notice Concerning Unexpired Leases and Executory Contracts on the counterparties to such leases and contracts, which Notice also included

---

[3] To the extent the Debtor has previously served any party identified herein via electronic mail, such service of the Sale Notice constitutes good and sufficient notice thereof.

notice of the Sale and certain bar dates to file objections.[4]

K.    The Debtor published notice of the Sale Motion, the Bidding Procedures, the hearing(s) seeking approval of the Sale Motion, the time and place of the proposed Auction of the Acquired Assets, and the time for filing objections to the Sale Motion in the *Minneapolis Star Tribune* on January 31, 2011 and in the *Wall Street Journal Midwest Edition* on February 2, 2011.

L.    Based upon the foregoing and the certificates of service and publication filed with the Court, due, proper, timely, adequate and sufficient notice of the Sale Motion, the initial hearing on the Sale Motion, the Auction, the Sale Approval Hearing, the Sale of the Acquired Assets, the proposed assumption and assignment of the Assumed Leases and Acquired Contracts and the proposed rejection of the contracts has been provided in accordance with Section 102(1), Section 363(b) and Section 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008, due process of law and in compliance with the Sale Procedures Order and no other or further notice of the Sale Motion, the initial hearing on the Sale Motion, the Auction, the Sale Approval Hearing, the Sale of the Acquired Assets, the proposed assumption and assignment of the Assumed Leases and Acquired Contracts, the proposed rejection of the contracts or the entry of this Sale Approval Order is required or necessary.

M.    All parties in interest, including, without limitation, all parties who claim an interest in or lien upon the Acquired Assets, all equity members of the Debtor, all U.S. or foreign federal, state and local governmental taxing authorities who have, or as a result of the Sale of Acquired Assets may have, claims, contingent or otherwise against the Debtor, have been given a reasonably opportunity to object and be heard, regarding the relief requested in the Sale Motion.

---

[4] Holders of Assumed Leases and Acquired Contracts or Rejected Contracts were also served with the Sale Motion and Notice of Sale, except that four parties holding Assumed Leases or Acquired Contracts were served only the Notice Concerning Unexpired Leases and Executory Contracts including: BNSF Railway Co., Otter Tail Valley Railroad; City of Fergus Falls and Great Plains Natural Gas Co.  The court finds that these four parties received sufficient notice of the sale and assumption and assignment of contracts, and opportunity to object.

The notices discussed above set a bar date for all parties to object to the Sale of February 11, 2011, and for holders of Assumed and Acquired Contracts and Leases to object to the assumption and assignment of February 14, 2011. The Bankruptcy Court and the Debtor received no objections to the Sale or the assumption and assignment of Assumed Acquired Contracts and Leases.

N.      As demonstrated by the testimony or other evidence proffered or adduced at the Sale Approval Hearing: (i) the offer from the Buyer constitutes the highest and best offer(s) for the Acquired Assets; (ii) the Debtor conducted an auction process in accordance with, and have otherwise complied in all respects with, the Sale Procedures Order; (iii) the auction process set forth in the Sale Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets; and (iv) the auction process was duly noticed and conducted in a non-collusive, fair, and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Acquired Assets.

O.      In accordance with the Sale Procedures Order, the Asset Purchase Agreement was deemed a Qualified Bid (as defined in the Bidding Procedures) and was eligible to participate at the Auction.

P.      After consultation with the Consulting Parties in accordance with the Bid Procedures, the Debtor has determined that the APA constitutes the highest and best offer for the Acquired Assets, and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. The Debtor's determination that the APA constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtor's business judgment.

Q.      The APA represents a fair and reasonable offer to purchase the Acquired Assets

under the circumstances of the Chapter 11 Case. No other Person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtor's estate than the Buyer.

R.      The purchase price as set forth in the APA (the "Purchase Price") for the Acquired Assets is fair and reasonable, and constitutes reasonable consideration and reasonably equivalent and fair market value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and Section 548 of the Bankruptcy Code) under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.  Approval of the APA and the Sale of the Acquired Assets in accordance with this Order and the APA are in the best interests of the Debtor's estate, creditors and other parties in interest.  The terms of the APA were negotiated at arms'-length, in good faith, and are fair and reasonable.

S.      The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtor nor the Buyer is entering into the transaction contemplated by the APA fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

T.      The Debtor has demonstrated compelling circumstances and good, sufficient and sound business purposes for the Sale of the Acquired Assets pursuant to Section 363(b) of the Bankruptcy Code outside of a plan of reorganization and, in that, among other things:

> (1) To maximize the value of the Acquired Assets, a Sale must be accomplished within the time constraints set forth in the APA, the Sale Procedures Order and the Bidding Procedures because the value of the Acquired Assets may decrease during the time it would otherwise take to propose and confirm a plan of reorganization, and, in any event, a plan may not be necessary or confirmable in these Chapter 11 Cases;

(2) Claims against the Debtor's estate will be minimized as a result of the prompt consummation of a Sale of Acquired Assets. The Buyer will be assuming certain Assumed Liabilities. To the extent that the Buyer assumes the Assumed Liabilities, the holders of such Assumed Liabilities will have no further recourse against the Debtor or its estate and the rights of the holders of such claims to pursue the Debtor or its estates for liability arising from such Assumed Liabilities will be extinguished; and

(3) The Sale does not constitute a de facto plan of reorganization or liquidation or an element of such a plan for any of the Debtor, as it does not and does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtor; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtor; (iii) circumvent chapter 11 plan safeguards, such as those set forth in Sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies or extend debt maturities.

U.    The Debtor (i) has full corporate or other power to execute, deliver, and perform its obligations under the APA and all other documents contemplated  thereby or entered into in connection therewith, and the Sale of the Acquired Assets by the Debtor has, in each case, been duly and validly authorized by all necessary corporate or similar action, and (ii) has taken all action necessary to authorize and approve the APA and such other documents contemplated thereby and the consummation by them of the transactions contemplated thereby or entered into connection therewith.  No third-party approvals, other than those expressly provided in the APA, if any, are required by the Debtor to consummate such transaction.

V.    The Debtor is authorized and directed to sell and transfer the Acquired Assets free and clear of all Claims (as that term is defined in paragraph 7 hereof) because it has satisfied the requirements of Section 363(f) of the Bankruptcy Code.

W.    Except for the Assumed Liabilities and except as otherwise provided in the APA, the transfer of the Acquired Assets to the Buyer, and assumption and assignment to the Buyer of the Assumed Leases and Acquired Contracts, will not subject the Buyer to any liability whatsoever with respect to the operation of the Debtor's businesses prior to the Closing Date,

including, without limitation, any liability arising from any of the following: (i) any employment or labor agreements, consulting agreements, severance arrangements, change in control agreements or other similar agreements to which any Debtor is or was a party, (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including without limitation, any pension plan of the Debtor, (iii) the cessation of the Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs and any obligations with respect thereto that arise from the Employee Retirement Income Security Act of 1974, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Family Medical Leave Act or the Worker Adjustment and Retraining Notification Act, (iv) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims; (v) environmental liabilities, debts, claims or obligations which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any other environmental, health and safety requirements, (vi) any bulk sales act or similar law, and (vii) any litigation by or against the Debtor.

X.      Those holders of Claims against the Debtor, its estate or any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented to the Sale pursuant to Section 363(f)(2) of the Bankruptcy Code. The Debtor has met the requirements of Section 363(f)(5) with respect to all other holders of Claims as such Claim holders will have their Claims, if any, in each instance against the Debtor, its estate or any of the Acquired Assets, attach to the net cash proceeds of the Sale ultimately attributable to the Acquired

Assets, in which such creditor alleges a Claim, in the same order of priority, with the same validity, force and effect that such Claims had prior to the Sale, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

Y.      U.S. Bank, National Association, and Otter Tail County hold a claim against the Debtor pursuant to an unrecorded Solid Waste Facility Lease Agreement dated May 1, 2007 (defined in the APA as the "SWF Lease") which is repayable in total by Debtor in the same amount of three bond issuances.  The first bond issuance consisted of $20,000,000 of subordinate exempt facility revenue bonds (Series 2007A)(the "Revenue Bonds").  U.S. Bank National Association (the "Revenue Bond Indenture Trustee") is the indenture trustee for the holders of the Revenue Bonds.  The Debtor has also executed a related Guaranty Agreement in favor of the Revenue Bond Indenture Trustee, whereby it guaranteed repayment of the $20,000,000 with respect to the Revenue Bonds.  The payments under the Guaranty Agreement are secured by a Mortgage, Security Interest and Assignment of Rents and Leases in favor of the Revenue Bond Indenture Trustee covering the Debtor's ethanol plant, related real property, and equipment dated May 1, 2007 and recorded in the Office of the County Recorder of Otter Tail County on May 3, 2007, as Instrument No. 1018511   (the "Trustee Mortgage").   Otter Tail County further completed two issuances of general obligation tax abatement bonds (Series 2007B and 2007C) totaling $6,010,000 (the "General Obligation Bonds").   The payments under the General Obligation Bonds are secured by a Mortgage, Security Interest and Assignment of Rents and Leases in favor of the County covering the Debtor's ethanol plant, related real property, and equipment dated May 1, 2007 and recorded in the Office of the County Recorder of Otter Tail County on May 22, 2007, as Instrument No. 1019565 (the "County Mortgage").

Z.      The SWF Lease (as defined in the APA) is not a true lease but rather a security

agreement. The Debtor owns all of the property covered by the SWF Lease, and may transfer that property free and clear of the claims of U.S. Bank, National Association, Otter Tail County, the holders of the Revenue Bonds and the holders of the General Obligation Bonds.

AA.    By reason of the Debtor's legal rights and/or the Stipulation and Agreement for Sale and Liquidation of Assets of the Debtor (the "Solid Waste Stipulation") the Debtor has the right to convey title to the Acquired Assets free and clear of any liens or claims of the Revenue Bond Indenture Trustee, the holders of the Revenue Bonds and the County.

BB.    The Buyer would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate and its creditors, if the sale of the Acquired Assets to the Buyer, the assumption of liabilities and obligations as set forth in the APA by the Buyer and the assignment of the Assumed Leases and Acquired Contracts were not free and clear of all Claims including, but not limited to, successor liability.

CC.    The APA was negotiated, proposed and entered into by the parties in good faith, from arm's-length bargaining positions and without collusion. The Debtor has followed in good faith the procedures for notice and sale of the Acquired Assets as set forth in the Sale Procedures Order. The Buyer is not an "insider" or "affiliate" of the Debtor (as each such term is defined in the Bankruptcy Code). Neither the Debtor nor the Buyer have engaged in any conduct that would prevent the application of Section 363(m) of the Bankruptcy Code or cause the application of Section 363(n) of the Bankruptcy Code to the Sale and the transactions contemplated by the APA. Specifically, the Buyer has not acted in a collusive manner with any person and the aggregate price paid by Buyer for the Acquired Assets was not controlled by any agreement among the bidders. The Buyer is entitled to the protections afforded under Section 363(m) of the Bankruptcy Code because the Buyer is a good faith purchaser in that, *inter alia:* (a) except as set forth in the Sale

Procedures Order, the Buyer recognized that the Debtor was free to deal with any other party interested in acquiring the Acquired Assets; (b) the Buyer complied with the provisions in the Sale Procedures Order; (c) the Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Sale Procedures Order; (d) the Buyer in no way induced or caused the chapter 11 filings by the Debtor; (e) all payments to be made by the Buyer in connection with the Sale have been disclosed; (f) no common identity of directors or controlling stockholders exists between the Buyer and the Debtor (g) the Buyer has not entered into any agreements that have not been disclosed to the Court; and (h) the negotiation and execution of the APA was at arms' length and in good faith.

DD.    Carl Marks Advisory Group, LLC ("CMAG") acted as the Debtor's financial advisor for the sale of the Acquired Assets and worked with the Debtor and the Buyer to negotiate and finalize the APA and the conveyance of the Acquired Assets to the Buyer pursuant hereto. To the extent that CMAG or any other Person is entitled to any fees in connection with negotiation and consummation of the Sale, Buyer shall not be liable in any way for such fees. The Debtor and its estate shall be solely liable to CMAG or any other Person for any such fees.

EE.    In the absence of a stay pending appeal, if any, if the Closing occurs at any time after entry of this Sale Approval Order, then, with respect to the APA, the Buyer, as a purchaser in good faith of the Acquired Assets, shall be entitled to the protections of Section 363(m) of the Bankruptcy Code if this Sale Approval Order or any authorization contained herein is reversed or modified on appeal.

FF.    The Debtor has the right and power to convey the Acquired Assets as the sole and lawful owner of the Acquired Assets. Effective as of the Closing, the transfer of the Acquired Assets is or will (i) be legal, valid and effective transfers of property of the Debtor's estate to the

Buyer, as more particularly set forth in the APA, and (ii) vest the Buyer with all right, title, and

interest of the Debtor and the Debtor's estate in and to the Acquired Assets free and clear of all

Claims (as defined in Paragraph 7 herein) under Sections 363(f) and 105 of the Bankruptcy Code.

GG.     Adequate notice and opportunity to be heard was provided to parties to executory

contracts and unexpired leases to be rejected or assumed and assigned pursuant to this Sale

Approval Order. Further, parties received adequate notice and an opportunity to object to the

amount of any cure owed by the Debtor's estates on account of any executory contract or

unexpired lease to be assumed and assigned to the Buyer under the APA.

HH.     The Debtor has demonstrated that it is an exercise of its sound business

judgment to assume and assign those Assumed Leases and Acquired Contracts, as defined in the

APA and described on Schedule 2.1(J) to the APA, including any amendments or modifications to

such Exhibits as agreed to by the Debtor and Buyer pursuant to the APA (collectively, the

"Assumed Contracts"), in connection with the consummation of the Sale of Acquired Assets, and

the assumption and assignment of the Assumed Leases and Acquired Contracts is in the best

interests of the Debtor, its estate, its creditors and its members.  The Assumed Leases and

Acquired Contracts being assigned to the Buyer as set forth in the APA are an integral part of the

Debtor's business being purchased by the Buyer and, accordingly, such assumption and

assignment of Assumed Leases and Acquired Contracts is reasonable, enhances the value of the

Debtor's estate, and does not constitute unfair discrimination.

II.     The Debtor has obtained a waiver or paid or will pay all amounts it is required

to pay in connection with the assumption and assignment of the Assumed Leases and Acquired

Contracts, if any (the "Cure Amounts"), due or owing under Sections 365(b)(1)(A) and (B)

and 365(f)(2)(A) of the Bankruptcy Code to (i) cure any defaults under the Assumed Leases and

Acquired Contracts specified in this Sale Approval Order or in a separate order of even date or (ii) pay all actual or pecuniary losses that have resulted from such defaults (except with respect to those liabilities expressly assumed by Buyer pursuant to the APA). Accordingly, the Debtor has satisfied the requirements of Sections 365(b)(1)(A) and (B) and Section 365(f)(2)(A) of the Bankruptcy Code. The Assumed Leases and Acquired Contracts are unexpired leases or executory contracts within the meaning of the Bankruptcy Code. The promises of Buyer and the Debtor to pay the Cure Amounts and the Buyer's promise to perform the obligations under the Assumed Leases and Acquired Contracts after the closing date shall constitute adequate assurance of the Buyer's future performance under the Assumed Leases and Acquired Contracts specified in this Sale Approval Order or in a separate order of even date being assigned to it within the meaning of Sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.

JJ.	The assumption and assignment of the Assumed Leases and Acquired Contracts is integral to the APA and is in the best interests of the Debtor and its estate, creditors and equity members, and represents the exercise of the Debtor's sound business judgment. Any objections to the assumption and assignment of any of the Assumed Leases and Acquired Contracts to the Buyer are hereby overruled. No objections were filed or made with respect to the Cure Amounts associated with such Assumed Leases and Acquired Contracts. To the extent that any counterparty failed to timely object to (i) the proposed assumption and assignment of the applicable Assumed Lease or Acquired Contract or (ii) the Cure Amount associated with the applicable Assumed Lease or Acquired Contract, such counterparty is deemed to have consented to such Cure Amount and the assumption and assignments of its respective Assumed Lease or Acquired Contract to the Buyer.

KK.	The Debtor has demonstrated that it is an exercise of its sound business

judgment to reject the Excluded Leases and Excluded Contracts listed on Schedule 2.3(A)  to the

APA, including any amendments or modifications to such Exhibit as agreed to by the Debtor and

Buyer pursuant to the APA (the "Rejected Contracts"), in connection with the consummation of the

Sale of the Acquired Assets, and rejection of the Rejected Contracts is in the best interest of the

Debtor, its estate, the creditors and the equity members.

LL.    Unless such liabilities constitute Assumed Liabilities of the Buyer pursuant to the

APA or this Sale Approval Order, the transfer of the Acquired Assets does not and will not

subject the Buyer to any liability for Claims (as defined in Paragraph 7 herein) against the

Debtor or its estate under the laws of the United States, any state, commonwealth, territory or

possession thereof or the District of Columbia applicable to such transactions by reason of such

transfer of the Acquired Assets.

MM.   Neither the Buyer nor its affiliates shall be deemed, as a result of any action

taken in connection with the purchase of the Acquired Assets, to: (1) be a successor (or other

such similarly situated party) to the Debtor (other than with respect to the Assumed Liabilities as

expressly stated in the APA); (2) have, *de facto* or otherwise, merged with or into the Debtor; (3)

be a mere continuation of the Debtor or its estates (and there is no continuity of enterprise

between the Buyer and the Debtor); or (4) be holding itself out to the public as a continuation of

the Debtor.  The Buyer is not acquiring or assuming any liability, warranty or other obligation of

the Debtor, except as expressly set forth in the APA with respect to the Assumed Liabilities. The

Debtor and its estate, and all parties who claim by or through them, will release and forever

discharge the Buyer and any of its affiliates, successors and assigns from any and all claims,

causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind,

character or nature whatsoever, known or unknown, fixed or contingent, relating to the Sale,

14

except for liabilities and obligations under the APA.

NN.    The Debtor has good, valid and marketable title to all of the Acquired Assets. The Acquired Assets are to be transferred free and clear of any and all Claims. All of the Acquired Assets are, or will on the date of Closing, be owned by the Debtor and will be transferred under the APA.

**IT IS HEREBY ORDERED:**

<u>**General Provisions**</u>

1.    The Sale Motion is hereby granted to the extent provided herein.

2.    No other parties have filed formal objections to the Sale Motion, but to the extent any documents in the record could be construed as objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, including all reservations of rights included therein, which are not otherwise provided for by this Sale Approval Order, such objections are overruled on the merits.

<u>**Approval of the APA**</u>

3.    Each and every term of the APA, and all other ancillary documents, is hereby approved.

4.    The Sale of the Acquired Assets to Buyer pursuant to the APA is hereby authorized under Section 363(b) of the Bankruptcy Code and the entry of the Debtor into the APA is hereby approved.  The proceeds of sale shall first be to pay the administrative costs of the sale, including (i) the Break-Up Fee, and Expense Reimbursement, (ii) the payment of any reasonable Transaction Fee to CMAG, and (iii) payment of other Professional Fees specifically incurred in connection with the Sale, provided that the payment of fees to CMAG and to Debtor's counsel shall be subject to that certain Stipulation and Agreement for Sale and

Liquidation of Assets among the Debtor, the County and the Bond Indenture Trustee dated as of January 25, 2011 (the "Solid Waste Stipulation"). The Net Proceeds (i.e. those amount remaining after payment of the administrative expenses above) from the sale shall be paid first to AgStar Financial Services, PCA on its own behalf and as an Administrative Agent on behalf of MMCDC New Markets Fund II, LLC ("NMF"), until their secured claims are paid in full taking into account any portion of those secured claims that may have been assumed by the Buyer with the written consent of AgStar or NMF as the case may be or both, then, second to the Bond Indenture Trustee and the County as set forth in the Solid Waste Stipulation to the extent and in the manner provided therein. The balance of any sales proceeds, as well as Excluded Assets under the APA, shall be deposited into an account of the Debtor's and will be subject to the Solid Waste Stipulation to the extent set forth therein and to the extent not distributed there under, be available for treatment under a Plan of Liquidation to be filed or amended by the Debtor or as otherwise may be provided by the Bankruptcy Code. All distributions made pursuant to this Order shall be final when made and no longer property of the Debtor or the bankruptcy estate.

5.     The Debtor, through any corporate officer, is authorized and directed to execute and deliver, and empowered to fully perform under, consummate, implement and close the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement such agreements, including taking any actions that otherwise would require further approval by members or its board of governors (without the need of obtaining such approvals) and to take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession, any or all of the Acquired Assets, or as may be necessary or appropriate

to the performance of the obligations of the Debtor under the APA, including effectuating

amendments to the APA in furtherance thereof.  All Persons necessary to effect the transactions

contemplated by the APA are hereby ordered to execute any and all documents necessary to

effect such transactions. If any Person fails to comply with the provisions of this paragraph 5

prior to the Closing Date, such Person (or Persons, as the case may be) shall nonetheless be

deemed bound to any and all documents necessary to effect the transactions contemplated under

the APA.

6.    The Buyer shall not be required to seek or obtain relief from the automatic stay

under Section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any

other Sale-related document. The automatic stay imposed by Section 362 of the Bankruptcy

Code is modified solely to the extent necessary to implement the preceding sentence and the

other provisions of this Sale Approval Order.

**<u>Transfer of the Acquired Assets</u>**

7.    Pursuant to 11 U.S.C. §§ 105(a), 363(b) and 363(f), the Acquired Assets shall be

transferred to the Buyer, in accordance with the APA, free and clear of any and all liens,

encumbrances, claims, charges and interests thereon and there against of whatever type or

description, including, without limitation, mechanics', materialmens' and other consensual or

statutory liens, obligations, mortgages, demands, guaranties, options, rights (including, but not

limited to, rights of first refusal, rights of way and rights of recovery), contractual commitments,

pledges, restrictions (including, but not limited to, any restriction on the use, transfer, receipt of

income or other exercise of any attributes of ownership of the Acquired Assets and all debts

arising in any way in connection with any acts of the Debtor), easements, encumbrances,

covenants, defects, hypothecations, charges, indentures, loan agreements, instruments, leases,

17

licenses, conditional sale or other title retention agreements, options, contracts, offsets, recoupment, rights of recovery, judgments, orders, and decrees of any court or governmental entity, (all such claims and interests described in this paragraph shall hereafter be referred to as the "Claim" or "Claims", *provided, however,* the term Claims shall not include Assumed Liabilities), having arisen, existed or accrued prior to and through the Closing Date, whether direct or indirect, monetary or non-monetary, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, absolute or contingent, matured or unmatured, liquidated or unliquidated, of, by or against Debtor or the Acquired Assets and further including, without limitation, the following:

     a.     Claims arising through the Closing Date, if any, of any governmental unit for taxes; any Claim arising through the Closing Date relating to any executory contract or lease (whether of personal or real property, or otherwise) affecting or in any way related to the Acquired Assets, without limitation, Claims of Debtor's vendors, suppliers and/or customers arising from Debtor's failure to perform its obligations to said parties whether such failure occurred prior to or on the Closing Date or whether such failure arose as a result of an election by Buyer on or before the Closing Date not to accept and/or perform such vendors', suppliers' or customers' account and/or orders subsequent to the Closing Date;

     b.     Any Claim arising through the Closing Date relating to work performed by any contractor or materialman that would give rise to a mechanic's lien, or similar Claim, against the Acquired Assets;

     c.     Any Claim arising through the Closing Date for attorney's fees or other costs or expenses claimed by lessors, lessees, licensees or any other non-debtor parties to

executory contracts or any lease;

d.      Any Claim arising through the Closing Date based on acts or omissions of the

Debtor arising in tort, contract or otherwise, including, without limitation, Claims for

successor liability or products liability;

e.      Any Claim arising through the Closing Date relating to liability arising under any

federal, state or local revenue or tax law or requirement;

f.      Any Claim arising through the Closing Date relating to liability arising under (i)

any employment or labor agreements, consulting agreements, severance arrangements,

change in control agreements or other similar agreements to which Debtor is or was a

party, (ii) any pension, welfare, compensation or other employee benefit plans,

agreements, practices, and programs, including without limitation, any pension plan of the

Debtor, (iii) the cessation of the Debtor's operations, dismissal of employees, or

termination of employment or labor agreements or pension, welfare, compensation or

other employee benefit plans, agreements, practices and programs and any obligations

with respect thereto that arise from the Employee Retirement Income Security Act of

1974, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age

Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the

National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of

1985, the Family Medical Leave Act or the Worker Adjustment and Retraining Notification

Act, (iv) workmen's compensation, occupational disease or unemployment or temporary

disability insurance claims; (v) liabilities, debts, claims or obligations which may be

asserted on any basis under any environmental laws, rules or regulations including,

without limitation, under the Comprehensive Environmental Response, Compensation and

Liability Act or any other environmental, health and safety requirements, (vi) any bulk sales act or similar law, and (vii) any litigation by or against the Debtor

g.      Any claim by an employee of the Debtor relating to their termination by the Debtor as a consequence of this Sale Order or the transactions contemplated by the APA.

h.      Any claim by any person or entity relating to any health or welfare benefit for the benefit of any current or former employee of Debtor or their dependents or beneficiaries.

In addition, Buyer and its parent and affiliates, successors or assigns or their respective property (including the Acquired Assets) shall not be liable, by operation of law or otherwise, for any Claim by virtue of the purchase of the Acquired Assets or subsequent operation of the Acquired Assets or performance of the Assumed Leases and Acquired Contracts including, without limitation, claims of the type set forth in sub-paragraphs (a)-(h) above.

8.      All such Claims released, terminated and discharged as to the Acquired Assets shall attach to the sale proceeds with the same validity, force and effect which they now have as against the Debtors, the estates or the Acquired Assets.  The sole and exclusive right and remedy available to purported creditors, equity members, including, without limitation, equity members of the Debtor, holders of Claims, and parties in interest shall be a right to assert Claims against the Debtor's estate.

9.      Any and all obligations, liens or rights related to the SWF Lease and Guaranty Agreement are hereby extinguished, and it is hereby further confirmed that the Acquired Assets include the assets previously covered by the SWF Lease and Guaranty Agreement and that such Acquired Assets are transferred free and clear of any and all interests of the mortgage and security interest securing the SWF Lease and related Guaranty Agreement, any interests of the Revenue Bond Indenture Trustee, Otter Tail County, holders of the Revenue Bonds, and holders

of the General Obligation Bonds (all as defined in the APA), including but not limited to the Trustee Mortgage and the County Mortgage.

10.     All persons and entities (including, but not limited to, the Debtor, creditors, equity members, including, without limitation, employees, former employees and shareholders, administrative agencies, governmental departments, secretaries of state, federal, state and local officials) and their respective successors or assigns and any trustees thereof, shall be and are hereby permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the Acquired Assets or the Buyer and its successors or assigns as alleged successor or otherwise with respect to any Claims of any kind and nature with respect to the Acquired Assets, except for Assumed Liabilities.

11.     If the proposed Sale fails to close for any reason, then Claims shall continue against the Acquired Assets unaffected by this Sale Approval Order.

12.     The Buyer has any and all rights, claims, defenses and offsets held by Debtor and the estate with respect to Assumed Liabilities.

13.     Except for Assumed Liabilities as set forth in the APA, the transfer of the Acquired Assets pursuant to this Sale Approval Order shall not subject the Buyer to any liability with respect to any obligations incurred in connection with, or in any way related to the Acquired Assets, prior to the date of Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable subordination or successor or transferee liability. The sole and exclusive right and remedy available to any Person who asserts any Claim or other liability with respect to any obligations incurred in connection with, or in any way related to the Acquired Assets, prior

21

to the date of Closing or by reason of the Sale shall be a right to assert such Claim or other liability against the Debtor's estate.

**Assumption and Assignment to Buyer of Assumed Leases and Acquired Contracts**

14.    Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned upon the Closing of the Sale, the Debtor's assumption and assignment to the Buyer, and the Buyer's assumption on the terms set forth in the APA and this Sale Approval Order, of the Assumed Leases and Acquired Contracts specified in this Sale Approval Order is approved, and the requirements of 11 U.S.C. § 365(b)(1) with respect thereto are deemed satisfied.

15.    The Debtors is authorized and directed in accordance with 11 U.S.C. §§ 105(a) and 365 to (a) assume and assign to Buyer, effective upon the Closing of the Sale, the Assumed Leases and Acquired Contracts specified in Schedule 2.1J of the APA, as incorporated into this Sale Approval Order, free and clear of all Claims, other than the Assumed Liabilities, and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Leases and Acquired Contracts specified in Schedule 2.1J of the APA, as incorporated into this Sale Approval Order, to the Buyer.

16.    With respect to the Assumed Leases and Acquired Contracts: (a) each Assumed Lease and Acquired Contract, as applicable, is an unexpired lease or executory contract under Section 365 of the Bankruptcy Code; (b) the Debtor may assume each of the Assumed Leases and Acquired Contracts in accordance with Section 365 of the Bankruptcy Code; (c) the Debtor may assign each Assumed Lease and Acquired Contract in accordance with Sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assumed Lease or Acquired Contract that prohibit or condition the assignment of such Assumed Lease or Acquired Contract or allow the party to such Assumed Lease or Acquired Contract to terminate, recapture, impose any penalty,

22

condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Lease or Acquired Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under Sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to Buyer of each Assumed Lease and Acquired Contract have been satisfied; (e) the Assumed Leases and Acquired Contracts shall be transferred and assigned to, and following the Closing remain in full force and effect for the benefit of Buyer, notwithstanding any provision in any such Assumed Lease or Acquired Contract (including those of the type described in Sections 365(b)(2), (c)(1) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to Section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Assumed Leases and Acquired Contracts after such assignment to and assumption by Buyer; and (g) upon Closing, in accordance with Sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested in all right, title and interest of each Assumed Lease and Acquired Contract.

17. Each of the Assumed Leases and Acquired Contracts specified in this Sale Approval Order or in a separate order of even date shall, upon assignment to the Buyer, be deemed to be valid and binding on the Buyer and in full force and effect and enforceable in accordance with their terms, and following such assignment, the Debtor and the estate shall be relieved, pursuant to Section 365(k) of the Bankruptcy Code, from any liability for any breach of such Assumed Leases and Acquired Contracts occurring after such assignment.

18. Each non-Debtor party to an Assumed Lease and Acquired Contract specified in this Sale Approval Order or in a separate order of even date is hereby barred and enjoined from asserting against the Buyer, the Debtor or the Debtor's estate (i) any default existing as of the date

of the Sale Hearing if such default was not raised or asserted in a timely manner prior to the entry

of the Sale Approval Order or (ii) any objection to the assumption and assignment of such non-

Debtor party's Assumed Leases and Acquired Contracts or the Cure Amount, if any, of which

the non-Debtors party was given notice prior to the Sale Hearing. The assignment of each such

Assumed Lease and Acquired Contract to the Buyer will not cause a default or otherwise allow

the non-Debtor's party thereto to terminate or adversely affect the Buyer's rights

thereunder. Unless expressly provided in the APA, in no event shall the Buyer be liable for any

Cure Amounts or pre-Closing liabilities arising from or related to the Assumed Contracts with

the exception of the Assumed Liabilities.

19.     There shall be no rent accelerations, assignment fees, increases or any other fees

charged to the Buyer or the Debtor as a result of the assumption, assignment and/or transfer of

the Assumed Leases and Acquired Contracts.

20.     The Buyer's or its designated affiliate's promise to pay the Cure Amounts and to

perform the obligations under the Assumed Leases and Acquired Contracts after the closing date

shall constitute adequate assurance of its future performance under the Assumed Leases and

Acquired Contracts specified in this Sale Approval Order or in a separate order of even date

being assigned to it within the meaning of Sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy

Code.

21.     Upon assignment of the Assumed Leases and Acquired Contracts to the Buyer at

or subsequent to the Closing, no default shall exist under any Assumed Lease or Acquired

Contract and no non-Debtor party to any Assumed Lease or Acquired Contract shall be permitted

to declare a default by or against the Buyer under such Assumed Lease or Acquired Contract or

otherwise take action against the Buyer as a result of any Debtor's financial condition,

24

bankruptcy or failure to perform any of its obligations under the Assumed Lease or Acquired Contract. Upon entry of this Sale Approval Order and assumption and assignment of the Assumed Leases and Acquired Contracts, the Buyer shall be deemed in compliance with all terms and provisions of the Assumed Leases and Acquired Contracts.

22.     Notwithstanding anything to the contrary in this Sale Approval Order, no executory contract or unexpired lease will be assumed and assigned unless and until the Closing of the Sale.

23.     The failure of the Debtor or Buyer to enforce at any time one or more terms or conditions of any Assumed Lease or Acquired Contract shall not be a waiver of such terms or conditions, or of the Debtor's and Buyer's rights to enforce every term and condition of the Assumed Leases and Acquired Contracts.

## **Rejection of Excluded Contracts**

24.     The Excluded Contracts specified in Schedule 2.3A of the APA, as incorporated in this Sale Approval Order, shall be deemed rejected by the Debtor as of the date of Closing of the Sale pursuant to Section 365 of the Bankruptcy Code.

25.     Any person or entity that asserts a Claim against the Debtor's estate arising from the rejection of any of the Excluded Contracts shall be required to file a proof of claim with the Bankruptcy Court on or before thirty (30) days following service of this Sale Approval Order, or be forever barred from asserting such a Claim.

26.     Buyer shall not have any liability or other obligation arising from the Rejected Contracts or the rejection thereof. Any party to a Excluded Contract shall be forever and permanently enjoined, barred and estopped from asserting against the Buyer, any of its affiliates, its successors or assigns, their property or the Acquired Assets, any claim, lien or interest on

25

account of any Excluded Contract or the rejection thereof.

### Additional Provisions

27.    The transaction contemplated by the APA is undertaken by the Buyer in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Buyer. The Buyer is a purchaser in good faith of the Acquired Assets, and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code, and has otherwise acted in good faith with respect to the Debtor, the estate and the transaction contemplated by the APA.

28.    The consideration provided by the Buyer for the Acquired Assets under the APA (i) shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the other laws of the United States, any state, territory, possession or the District of Columbia and (ii) is fair and reasonable and may not be avoided under Section 363(n) or any other provision of the Bankruptcy Code, or otherwise.

29.    Neither the Buyer, its parents nor affiliates shall be deemed, as a result of any action taken in connection with the purchase of the Acquired Assets, to: (1) be a successor (or other such similarly situated party) the Debtor (other than with respect to the Assumed Liabilities as expressly stated in the APA); (2) have, *de facto* or otherwise, merged with or into the Debtor; (3) be a mere continuation of the Debtor or its estate (and there is no continuity of enterprise between the Buyer and the Debtor); or (4) be holding itself out to the public as a continuation of the Debtor.

30.    Each of the Debtor's creditors is hereby authorized and directed to execute such

documents and take all other actions as may be reasonably necessary to release such creditor's

Claims in the Acquired Assets, if any, as such Claims may have been recorded or may otherwise

exist.  If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis*

*pendens,* or other documents or agreements evidencing any Claims in, against or upon the

Acquired Assets prior to the Closing Date of the Sale, in proper form for filing and executed by

the appropriate parties, and has not executed termination statements, instruments of satisfaction,

releases of all Claims which the person or entity has with respect to the Acquired Assets, then on

the Closing Date, or as soon as possible thereafter, (i) the Debtor is hereby authorized and

directed to execute and file such statements, instruments, releases and other documents on behalf

of the person or entity with respect to the Acquired Assets and (ii) the Buyer is hereby authorized

on behalf of each of the Debtor's creditors, to file, register, or otherwise record a certified copy

of this Sale Approval Order, which, once filed, registered or otherwise recorded, shall constitute

conclusive evidence of the release of all Claims in, against, or upon the Acquired Assets of any

kind or nature whatsoever.

31.    All entities that are presently, or on the Closing Date may be, in possession of

some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired

Assets to the Buyer on the Closing Date, or as otherwise directed by Buyer, with the Claims of

such entity to be satisfied solely from the proceeds of the Sale.

32.    The Buyer shall have no liability or responsibility for any liability or other

obligation of the Debtor or its estate arising under or related to the Acquired Assets or other

assets, operations, activities, or businesses of Debtor or its Affiliates other than for the Assumed

Liabilities. Without limiting the generality of the foregoing, and except as otherwise specifically

provided for herein and in the APA, the Buyer shall not be liable for any Claims, including any

27

theory of successor or vicarious liability, of any kind or character whether known or unknown as of the date of Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Sale, the Debtor or its estate or any obligations of the Debtor or its Affiliates or the estate arising prior to the date of Closing, including but not limited to, liabilities arising, accruing, or payable under, out of, in connection with, or in any way relating to the Acquired Assets or the Acquired Business or the other assets, operations, activities, or businesses of the Debtor or its Affiliates.

33.     Subject to the APA, this Sale Approval Order (i) is and shall be effective as a determination that, at Closing, all Claims (except Assumed Liabilities) existing as to the Acquired Assets prior to the date of the Closing have been and hereby are unconditionally released, discharged and terminated as to the Acquired Assets, and that the conveyance described in this Sale Approval Order has been effected, (ii) is and shall be effective to cause all Claims (except Assumed Liabilities) to attach to and be perfected in the proceeds of the Sale of the Acquired Assets, in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets, without the need to file any financing statements or other evidence of perfection, and (iii) is and shall be binding upon and govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets.

34.     The Debtor or the Buyer and any agent or representative of either of them, are each hereby authorized and empowered to serve upon all filing and recording officers a notice when filing or recording any instruments of transfer (including, without limitation, deeds, leases, and assignments, modifications and terminations of leases) in accordance with this Sale Approval Order and the APA to evidence and implement this paragraph of the Sale Approval Order. All filing and recording officers are hereby directed to accept, file and record all instruments of transfer including, without limitation, deeds, leases, and assignments, modifications and terminations of leases (if any) to be filed and recorded pursuant to and in accordance with this Sale Approval Order or the APA and the various documents related thereto, without the payment of taxes associated with the transfer of the Acquired Assets to the Buyer.

35.     This Court retains exclusive jurisdiction to (i) enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, (ii) compel delivery of the Acquired Assets to the Buyer, (iii) resolve any disputes arising under or related to the APA and related agreements, except as otherwise provided therein, (iv) enjoin and adjudicate the assertion of any Claims against the Buyer or the Acquired Assets, and (v) interpret, implement and enforce the provisions of the APA or this Sale Approval Order.

36.     As of the Closing, all agreements and all orders of this Court entered prior to the date hereof shall be deemed amended or modified solely to the extent required to permit the consummation of the transactions contemplated by this Sale Approval Order and the APA.

37.     Nothing contained (i) in any plan of reorganization (or liquidation) confirmed in the Chapter 11 Case, (ii) the order of confirmation confirming any plan of reorganization (or liquidation), (iii) any order dismissing the Chapter 11 Case or converting it to a Chapter 7

liquidation or (iv) any order appointing an examiner or trustee in the case shall conflict with or derogate from the provisions of the APA or the terms of this Sale Approval Order and no such plan or order shall discharge the obligations of the Debtor under this Sale Approval Order or the APA or any documents or agreements delivered in connection therewith.

38.     The terms and provisions of the APA, together with the terms and provisions of this Sale Approval Order, shall be binding in all respects upon, and inure to the benefit of, the Buyer, the Debtor, the Debtor's estate, any of Debtor's affiliates, successors and assigns, the Debtor's creditors, equity members, including, without limitation, minority equity members of the Debtor, and third parties, including, but not limited to persons asserting a Claim against or interest in the Debtor's estate or any of the Acquired Assets to be sold to the Buyer pursuant to the APA or any persons that are party to any Assumed Leases and Acquired Contracts specified in this Sale Approval Order or in a separate order of even date, and their respective successors and assigns.  If a trustee or examiner is subsequently appointed in this Case, such trustee or examiner shall likewise be bound, in all respects, to the terms and provisions of this Sale Approval Order. The Order and the APA shall not be subject to rejection pursuant to Section 365 of the Bankruptcy Code or otherwise.

39.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement is either not material or is not less favorable to the Debtor. In the event a modification is material and less favorable to the Debtor, the Debtor shall file and serve a notice of such material modification. If no party-in-interest objects within five (5) business days, the modification shall be deemed approved and the Court may enter any such further order as

30

may be necessary.

40.    The failure specifically to include any particular provisions of the APA in this Sale Approval Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

41.    Upon Closing, the Debtor and its estate shall be deemed without further action or order of the Court to have released and discharged the Buyer and its affiliates, and their respective officers, directors, representative, agents, attorneys, investment bankers, and professionals, of and from any causes of action, legal or equitable, suits, debts, covenants, contracts, agreements, judgments, executions, claims, and demands whatsoever whether known or unknown, including in connection with the APA and the Sale of the Acquired Assets, except for obligations arising hereunder or under the APA.

39.    The provisions of Bankruptcy Rule 6004(h) and 6006(d) staying the effectiveness of this Order for fourteen (14) days are hereby waived, and this Order shall be effective immediately upon entry thereof.

40.    To the extent that this Order is inconsistent with any prior Order or pleading with respect to the Sale Motion in these Chapter 11 Cases, the terms of this Order shall govern.

Dated: February 17, 2011

/e/ Dennis D. O'Brien
Dennis D. O'Brien
United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *02/17/2011*
Lori Vosejpka, Clerk, By DLR, Deputy Clerk