# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: Otter Tail Ag Enterprises, LLC,<br><br>Debtor. | Case No. 09-61250-DDO<br>Chapter 11 |

## DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN
## (PLAN OF LIQUIDATION)

Dated: June 1, 2011            MACKALL, CROUNSE & MOORE, PLC


By: /e/ Mychal A. Bruggeman
Timothy D. Moratzka (Atty No. 75036)
Mychal A. Bruggeman (Atty No 0345489)
1400 AT&T Tower
901 Marquette Ave
Minneapolis, Minnesota  55402
(612) 305-1400

**ATTORNEYS FOR DEBTOR**

# TABLE OF CONTENTS

**ARTICLE I – DEFINITIONS AND RULES OF INTERPRETATION**...................................1

**ARTICLE II – DESIGNATION, CLASSIFICATION, AND TREATMENT OF CLAIMS AND EQUITY INTERESTS** ........................................................6

Section 2.01 – Treatment of Unclassified Claims.....................................6

Section 2.02 – Designation of Classified Claims and Interests.....................7

Section 2.03 – Treatment of Classified Claims and Interests ......................7

Section 2.04 – Acceptance or Rejection of the Plan ...............................8

**ARTICLE III – MEANS FOR IMPLEMENTATION OF THE PLAN** .......................9

Section 3.01 – Distribution of Sale Proceeds; Funding of the Liquidation Account and Any Appropriate Reserve Accounts.....................................9

Section 3.02 – Continued Existence..............................................9

Section 3.03 – Further Authorization............................................9

Section 3.04 – U.S. Trustee Fees ...............................................9

Section 3.05 – Cancellation of Notes, Bonds, Instruments, Debentures and Equity Interests ....................................................................10

Section 3.06 – Notice of Effective Date........................................10

**ARTICLE IV – DEBTOR'S LIQUIDATION DUTIES** .................................10

Section 4.01 – Debtor as Liquidator............................................10

Section 4.02 – Compensation of Debtor .........................................11

Section 4.03 – Preservation of Causes of Action / Debtor's Belief That There Are No Causes of Action to Pursue .....................................................11

Section 4.04 – General Powers .................................................11

Section 4.05 – Duties of the Debtor ...........................................11

Section 4.06 – Retention of Professionals; Compensation .......................12

Section 4.07 – Limitation of Liability of Debtor ..............................12

Section 4.08 – Reliance by Debtor..............................................12

Section 4.09 – Reporting and Notice ...........................................12

**ARTICLE V – PROVISIONS REGARDING DISTRIBUTIONS** ............................................13

    Section 5.01 – No Distribution In Excess of Allowed Amount of Claim ..................................13

    Section 5.02 – Time and Method of Distributions ....................................................................13

    Section 5.03 – Means of Payment ............................................................................................13

    Section 5.04 – Disputed Claims ................................................................................................13

    Section 5.05 – Distribution Record Date; Delivery of Distribution ........................................13

    Section 5.06 – Fractional Dollars; *De Minimis* Distribution....................................................14

    Section 5.07 – Undeliverable Distributions .............................................................................14

    Section 5.08 – Setoff ................................................................................................................14

    Section 5.09 – Withholding Taxes ............................................................................................15

**ARTICLE VI – TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..............................................................................................................................15

**ARTICLE VII – CONDITIONS PRECEDENT** ...........................................................................15

    Section 7.01 – Conditions to Effective Date ............................................................................15

    Section 7.02 – Waiver of Conditions .......................................................................................16

    Section 7.03 – Effect of Non-Occurrence of the Effective Date ..............................................16

**ARTICLE VIII – EFFECT OF CONFIRMATION** .....................................................................16

    Section 8.01 – Binding Effect ...................................................................................................16

    Section 8.02 – Release by the Debtor of AgStar, NMF, Revenue Bondholders and Otter Tail County....................................................................................................................16

    Section 8.03 – Injunction .........................................................................................................17

    Section 8.04 – Exculpation.......................................................................................................17

**ARTICLE IX – RETENTION OF JURISDICTION**.....................................................................17

    Section 9.01 – Jurisdiction of the Bankruptcy Court ...............................................................17

**ARTICLE X – MISCELLANEOUS**..............................................................................................19

    Section 10.01 – Notices............................................................................................................19

    Section 10.02 – Governing Law................................................................................................19

    Section 10.03 – Term of Injunction or Stays ...........................................................................19

ii

Section 10.04 – Closing of the Chapter 11 Case................................................................20

Section 10.05 – Modifications and Amendments ..................................................................20

Section 10.06 – Exclusive Right to Modify Plan ..................................................................20

Section 10.07 – Effectuating Documents; Further Transactions.............................................20

Section 10.08 – Withdrawal or Revocation ..........................................................................20

Section 10.09 – Severability................................................................................................21

Section 10.10 – Headings....................................................................................................21

<u>**CHAPTER 11 PLAN OF LIQUIDATION FOR THE DEBTOR**</u>

  Otter Tail Ag Enterprises, LLC (the "Debtor"), proposes the following plan of liquidation (the "Plan") for the resolution of the Debtor's outstanding claims and equity interests.

**ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE ENCOURAGED TO READ THIS PLAN IN ITS ENTIRETY. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN THIS PLAN, THE PLAN PROPONENT RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

<u>**ARTICLE I**</u>

**DEFINITIONS AND RULES OF INTERPRETATION**

  The following terms used in the Plan shall have the respective meanings defined below:

  **(1)**   **Administrative Expense Claim** means an Allowed Claim for payment of an administrative expense of any kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority payment pursuant to Section 507(a)(2) of the Bankruptcy Code, including (a) the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the Debtor's business, including wages, salaries, or commissions for services rendered after the Petition date, and taxes incurred after the Petition Date; (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses approved, awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code, (c) Claims of suppliers under Section 503(b)(9) of the Bankruptcy Code, and (d) all Allowed Claims that are entitled to be treated as Administrative Expense Claims pursuant to a Final Order of the Bankruptcy Court.

  **(2)**   **Allowed** means, with respect to any Claim or Interest, proof of which was timely and properly filed or, if no proof of Claim or proof of Interest was filed, which has been or hereafter is listed by the Debtor on the Schedules as liquidated in amount and not disputed or contingent and, in either case, as to which no objection to allowance has been interposed, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder or otherwise be deemed to be Allowed pursuant to the terms of this Plan.

  **(3)**   **AgStar** means AgStar Financial Services, PCA.

  **(4)**   **AgStar Credit Agreements** means the (a) Construction and Term Note dated March 28, 2007; (b) an Amended and Restated Term Revolving Note dated June 23, 2008; (c) an Amended and Restated Revolving Line of Credit Note dated June 23, 2008; (d) the Master Loan Agreement dated March 28, 2007; (e) the First Supplement to the Master Loan Agreement dated as of March 28, 2007; (f) the Amended and Restated Master Loan Agreement dated as of June 23, 2008; (g) the Amended and Restated Second Supplement to the Master Loan Agreement

dated as of June 23, 2008; (h) the Second Amended and Restated Third Supplement to the Master Loan Agreement dated as of June 23, 2008; (i) a Mortgage, Security Agreement and Assignment of Rents and Leases dated March 28, 2007; (j) an Amended and Restated Mortgage, Security Agreement, and Assignment of Rents and Leases dated June 23, 2008; (k) a Security Agreement dated March 28, 2007; and (l) all other agreements, instruments, notes, guarantees, and other documents executed in connection therewith, including without limitation, all collateral and security documents executed by the Debtor in favor of AgStar.

(5) **AgStar Claims** means the former Claims of Ag Star relating to the AgStar Credit Agreements that have been paid in full in connection with the sale of the Debtor's assets pursuant to the Sale Order, which Claim is deemed an Allowed Claim in the amount of $0 for purposes of this Plan.

(6) **Avoidance Actions** means any actions, causes of action, claims, demands, suits or rights, created or arising in favor of the Debtor or its estate under the Bankruptcy Code, including all claims, rights and causes of action arising under Section 510 or under any of Sections 542 through 553 of the Bankruptcy Code.

(7) **Bar Date** means March 15, 2010, the date established by the Court as the last date for all creditors, other than governmental entities, to file proofs of claim against the Debtor, and April 28, 2010, the date established by the Court as the last date for governmental entities to file proofs of claim against the Debtor. The "Bar Date" for persons and entities claiming damages from the rejection of an executory contract or unexpired lease is May 23, 2011, which is thirty days after the Debtor served the Sale Order on holders of rejected executory contracts and unexpired leases. The term "Bar Date" also includes the deadline for filing Administrative Expense Claims, except for those Administrative Claims and Liquidation Expenses related to administering the liquidation of the Debtor's remaining assets, or otherwise winding-up the Debtor's business affairs, which date shall be thirty (30) days after the Effective Date.

(8) **Business Day** means any day, excluding Saturdays, Sundays, and legal holidays, on which the Bankruptcy Court is open.

(9) **Causes of Action** means any and all of the Debtor's and the Estate's Claims, causes of action, suits, proceedings, liabilities, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, torts, penalties, statutory violations, agreements, promises, variances, set off or recoupment rights, trespasses, damages, or judgments, whether asserted or unasserted, liquidated or unliquidated, arising under federal statutory or common-law or under the statutory or common-law of any state, territory, or other governmental unit (as that term is defined at Code § 101(27)), based on any act or omission or other event occurring prior to the Effective Date, including Avoidance Actions and any Claims acquired following the Petition Date.

(10) **Cash** means legal tender of the United States of America.

(11) **Chapter 11 Case** means the Bankruptcy of the Debtor, docketed as Case No. 09-61250-DDO in the Bankruptcy Court for the District of Minnesota.

**(12)** **Claim** means a "claim," as defined in Section 101(5) of the Bankruptcy Code, against the Debtor, whether or not asserted, whether or not the facts of or legal bases therefore are known or unknown, and specifically including, without express or implied limitation, any rights under Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claim and any contingent claim.

**(13)** **Claims Objection Deadline** means the last day for filing objections to Claims against the Debtor, which date shall be the later of thirty (30) days after the Effective Date of the Plan or the filing of the proof of claim for the Claim, unless extended by order of the Court for cause.

**(14)** **Confirmation Date** means the date that the Court enters an Order on the Court's docket confirming this Plan.

**(15)** **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**(16)** **County Bond Claim** means the Claim held by Otter Tail County against the Debtor under the County Bond Documents, which shall be deemed an Allowed Claim in the amount of $6,010,000 less any amounts received prior to the Effective Date pursuant to the Sale Order or the Stipulation.

**(17)** **County Bond Documents** means the (a) Lease Agreement as of May 1, 2007 between Otter Tail County, whose interest in payments there under was partially assigned to the Revenue Bond Indenture Trustee, and the Debtor dated May 1, 2007; (b) Mortgage, Security Agreement and Assignment of Rents and Leases dated May 1, 2007 granted by the Debtor to the Otter Tail County in the original principal amount of $6,010,000; and (c) all other agreements, instruments, notes, guarantees, and other documents executed in connection therewith, including without limitation, all collateral and security documents executed by the Debtor in favor of Otter Tail County.

**(18)** **Disputed**, with respect to a Claim, means a Claim as to which an objection has been or may be timely filed by a party-in-interest with standing and which objection has not been withdrawn or determined by a Final Order and which is not the subject of a compromise or settlement as described in this Plan.

**(19)** **Distribution** means a distribution or payment under the Plan to the holders of Allowed Claims.

**(20)** **Distribution Date** means any date that the Debtor, in its sole discretion, deems it appropriate to make a distribution or payment to holders of Allowed Claims, so long as sufficient Liquidation Assets are available to warrant a Distribution in the reasonable judgment of the Debtor and subject to the Debtor's right to delay Distributions.

**(21)** **Distribution Record Date** means a date established by the Confirmation Order that will be the date of determination as to the holder of any Claim except a Revenue Bond Claim for purposes of Distributions under this Plan.

**(22)** **Effective Date** means the first Business Day occurring at least fifteen (15) days after the Confirmation Date, on which all of the conditions set forth in Section 7.01 of the Plan have been satisfied.

**(23)** **Estate** means the bankruptcy estate of the Debtor, the scope of which is determined by reference to Section 541 of the Bankruptcy Code.

**(24)** **Final Distribution Date** means the date on which the Debtor makes the final Distribution of the Liquidation Assets in accordance with the Plan.

**(25)** **Final Order** means an order of the Court which has not been timely appealed or, if appealed, no stay of the order's effectiveness has been entered.

**(26)** **General Unsecured Claim** means any Claim that: (a) is not an Administrative Expense Claim, Priority Tax Claim, Secured Claim, Other Secured Claim or Priority Unsecured Claim; or (b) is otherwise determined by the Bankruptcy Court to be not secured by any property of the the Estate.

**(27)** **Interests** means the limited liability company membership interests in the Debtor.

**(28)** **Lease Agreement** means that Lease Agreement for lease of the solid waste disposal facility dated May 1, 2007 between the Debtor and Otter Tail County, whose interest was assigned to the Revenue Bond Indenture Trustee.

**(29)** **Liquidation Account** means the account established to hold Cash and proceeds of other Liquidation Assets converted to Cash by the Debtor.

**(30)** **Liquidation Assets** means all property of the the Estate, excluding any assets or property sold or distributed to any person other than the Debtor pursuant to the Sale Order and Stipulation.

**(31)** **Liquidation Expenses** means the actual and anticipated reasonable, ordinary costs and expenses of the Debtor, including, without limitation, (a) payment of, or reimbursement of the Debtor for, any and all wages, salary, costs, expenses (including, without limitation, accountants', attorneys' or other professionals' fees and expenses for services provided to the Debtor), and liabilities incurred by the Debtor in connection with the performance of its duties in connection with the Debtor.

**(32)** **NMF** means MMCDC New Markets Fund II, LLC

**(33)** **NMF Credit Agreements** means the (a) a Senior Loan Note dated March 30, 2007; the (b) a Subordinated Note dated March 30, 2007; (c) the Construction and Term Loan Agreement dated March 30, 2007; (d) a Mortgage, Security Agreement and Assignment of Rents and Leases dated March 30, 2007; and (e) all other agreements, instruments, notes, guarantees, and other documents executed in connection therewith, including without limitation, all collateral and security documents executed by the Debtor in favor of NMF.

**(34)** **NMF Claim** means the former Claims of NMF relating to the NMF Credit Agreements that have been released in connection with the sale of the Debtor's assets pursuant to the Sale Order, which Claim is deemed an Allowed Claim in the amount of $0 for purposes of this Plan.

**(35)** **Petition Date** means October 30, 2009.

**(36)** **Priority Tax Claim** means any allowed unsecured claim of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**(37)** **Priority Unsecured Claim** means any Claim other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in Section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

**(38)** **Pro Rata Share** means the proportion that the amount of any Claim bears to the aggregate amount of such Claim and all other Claims in the same Class entitled to Distributions from the same source of Cash, including Disputed Claims.

**(39)** **Reserve Account** means the account to which the Debtor shall deposit a sufficient amount of funds from Liquidation Assets to fund payment of Administrative Claims and Liquidation Expenses incurred during the liquidation and to reserve for payment of Disputed Claims.

**(40)** **Revenue Bondholders** means the holders of the Revenue Bonds.

**(41)** **Revenue Bonds** means, the Otter Tail County, Minnesota Subordinate Exempt Facility Revenue Bonds, Series 2007A in the outstanding principal amount of $20,000,000 issued under the Revenue Bond Indenture.

**(42)** **Revenue Bond Claim** means the claim held by the Revenue Bond Indenture Trustee on behalf of the Revenue Bondholders under the Revenue Bond Documents, which shall be deemed an Allowed Claim in the amount of $20,000,000 less amounts received on or before the Effective Date pursuant to the Sale Order and the Stipulation.

**(43)** **Revenue Bond Documents** means the (a) Revenue Bond Indenture; (b) Lease between Otter Tail County, whose interest in payments thereunder was partially assigned to the Revenue Bond Indenture Trustee, and the Debtor dated May 1, 2007; (c) Guaranty Agreement dated May 3, 2007; (d) Mortgage, Security Agreement and Assignment of Rents and Leases dated May 1, 2007 granted by Debtor to the Revenue Bond Indenture Trustee in the amount of $20,000,000; and (e) all other agreements, instruments, notes, guarantees, and other documents executed in connection therewith, including without limitation, all collateral and security documents executed by the Debtor in favor of the Revenue Bondholders or the Revenue Bond Indenture Trustee.

**(44)** **Revenue Bond Indenture** means the Trust Indenture, dated as of May 1, 2007, by and between the Revenue Bond Indenture Trustee, as indenture trustee, and Otter Tail County, Minnesota, as issuer of the Revenue Bonds.

**(45)** **Revenue Bond Indenture Trustee** means U.S. Bank National Association in its capacity as indenture trustee under the Revenue Bond Documents.

**(46)** **Sale** means the sale of certain assets of the Debtor approved by the Bankruptcy Court pursuant to the Sale Order.

**(47)** **Sale Order** means the order approving the Sale of the Debtor's assets entered on February 17, 2011.

**(48)** **Schedules** means the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs filed on or about October 30, 2009.

**(49)** **Secured Claim** means a Claim held by any entity to the extent of the value, as set forth in the Plan, as agreed to by the holder of such Claim and the Debtor, or as determined by a Final Order of the Bankruptcy Court pursuant to the Section 506(a) of the Bankruptcy Code, of any interest in property of the Estate securing such Claim; *provided, however,* that a Secured Claim shall not include any portion of the Claim that exceeds the value of the interest in property of the Estate securing such Claim.

**(50)** **Stipulation** means that Stipulation and Agreement for Sale and Liquidation of Assets of Otter Tail Ag Enterprises, LLC dated as of January 5, 2011, by and among the Debtor, the Revenue Bond Indenture Trustee and the County, which was approved by the Court by order dated January 28, 2011.

## ARTICLE II

## DESIGNATION, CLASSIFICATION, AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

This Plan designates all claims against or interests in the Debtor as an unclassified claim under Section 2.01 or as a classified claim under Section 2.02.

**Section 2.01  Treatment of Unclassified Claims.**

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified and are not entitled to vote on the Plan.

**(a)** **Administrative Expense Claims**

The Debtor expects that its obligations for Allowed Administrative Expense Claims will falls into two categories: (i) Claims for postpetition obligations incurred in the ordinary course of the Debtor's business, primarily Liquidation Expenses; and (ii) Claims of (A) the Debtor's professionals for compensation and reimbursement of expenses and (B) any entity who seeks compensation or reimbursement for professional services pursuant to Bankruptcy Code §§ 503(b)(3) or (b)(4).

Unless previously paid pursuant to the Sale Order, each holder of an Allowed Administrative Expense Claim shall receive Cash from the Liquidation Account equal to the

lesser of (A) the unpaid portion of such Allowed Administrative Expense Claim, without interest, and (B) such other amount agreed to by such holder on the later of (i) the Effective Date; (ii) the date such Allowed Administrative Expense Claim becomes due and payable under the terms governing the transaction underlying the Allowed Administrative Expense Claim; and (iii) as soon as practicable after the subject Administrative Expense Claim becomes Allowed. Claims for professional fees may be paid consistent with prior orders of the Court, the local rules of the Court, or upon approval by the Court, if required.

**(b)** **Priority Tax Claims**

To the extent there are any unpaid Priority Tax Claims, each holder of a Priority Tax Claim, shall receive payment in full in Cash from the Liquidation Account on the Effective Date, or as soon as practicable after the Priority Tax Claim becomes Allowed. The Debtor is not aware of any Priority Tax Claims.

**Section 2.02** **Designation of Classified Claims and Interests.**

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Interests in the Debtor. A Claim or Interest is placed in a particular class for the purposes of voting on the Plan and of receiving Distributions pursuant to the Plan only to the extent that such claim or interest is an Allowed Claim or Allowed Interest in that class and such claim or interest has not been paid, released, or otherwise settled prior to the Effective Date. The Debtor is not aware of any Secured Claims or Priority Unsecured Claims, and as such has not designed classes for these types of Claims.

**(a)** **Class One – General Unsecured Claims**

Class One consists of the General Unsecured Claims, including the County Bond Claim and the Revenue Bond Claim. For the avoidance of doubt Class One does not include the AgStar Claim or the NMF Claim and includes only the portions of the County Claim and the Revenue Bond Claim that have not been paid on or before the Effective Date pursuant to the Sale Order and the Stipulation, which amounts so paid are not covered by this Plan. Class One also consists of parties claiming rejection damages from the Debtor's rejection of executory contracts or unexpired leases who hold Allowed Claims. Class One is an impaired class and is entitled to vote on the Plan.

**(b)** **Class Two – Equity Interests**

Class Two consists of the holders of Interests. Class Two is presumed to reject the Plan as the class receives no Distribution under the Plan nor retains any property interest in the Debtor.

**Section 2.03** **Treatment of Classified Claims and Interests.**

The treatment with respect to each class of Claims and Interests provided for in this Section shall be in full and complete satisfaction, release and discharge of such Claims and Interests against the Debtor and the Estate. The Debtor shall only make distributions on account

of Allowed Claims. A claim that is disputed by the Debtor as to its amount only shall be deemed Allowed in the amount the Debtor admits owing and Disputed as to the remainder.

**(a)    Class One – General Unsecured Claims.**

On the Effective Date, the Debtor shall commence liquidation of any non-Cash Liquidation Assets and shall hold all proceeds and existing Cash in the Liquidation Account for Distribution in accordance with the Plan.  In full and final satisfaction of the Allowed Class One Claims, each holder of an Allowed Class One Claim as of the Distribution Record Date shall receive a Pro Rata Distribution from the proceeds of the Liquidation Assets and other Cash as soon as is reasonably practicable.  The initial Distribution may be a final Distribution if all Allowed Administrative Expense Claims and Liquidation Expenses have been paid, and there are no Disputed Claims.  If the Debtor or its professionals anticipate incurring additional Liquidation Expenses at the time of the initial Distribution, the initial Distribution, and any subsequent Distributions, shall occur only after depositing a sufficient amount in the Reserve Account as required by Section 3.01 of the Plan.

Class One is impaired by the Plan and is entitled to vote to accept or reject the Plan.

**(d)  Class Two - Equity Interests**

The holders of equity Interests shall neither receive any Distribution nor retain any property under the Plan on account of such claims.  Class Two is deemed to reject the Plan and is not entitled to vote.

**Section 2.04    Acceptance or Rejection of the Plan.**

**(a)    Classes Deemed to Accept the Plan**

No classes are deemed to accept the Plan

**(b)    Acceptance by Impaired Classes**

Class One is impaired under the Plan and thus the holders of Claims in such classes must vote on the Plan.  An impaired class of Claims has accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such class that have timely and properly voted to accept or reject the Plan.

**(c)    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

To the extent that any impaired class votes to reject the Plan or is deemed to have rejected it, the Debtor may request confirmation of the Plan under Section 1129(b) of the Bankruptcy Code.

# ARTICLE III

## MEANS FOR IMPLEMENTATION OF THE PLAN

**Section 3.01**     **Distribution of Sale Proceeds; Funding of the Liquidation Account and any Appropriate Reserve Accounts.**

The Sale Order and Stipulation provides for distribution of certain amounts obtained by the Debtor in connection with the Court authorized sale of its assets or otherwise held by the Debtor. These amounts have been distributed and are not the subject matter of this Plan. On the Effective Date, if not already accomplished, the Debtor shall fund the Liquidation Account with its existing Cash, estimated to be approximately $2,500,000. The Debtor shall also transfer Cash from the Liquidation Account to a Reserve Account to secure payment of U.S. Trustee fees and future Liquidation Expenses in an amount not to exceed $100,000, subject to approval of the court to the extent required by applicable bankruptcy rules with respect to professional fees.

After the Effective Date, if the Debtor liquidates any further Liquidation Assets, the Debtor shall deposit the net proceeds thereof into the Liquidation Account. The Liquidation Assets shall be distributed as stated in Section 2.03 to fund payments under this Plan, with appropriate reserves being maintained with respect to Disputed Claims or unpaid Administrative Expense Claims in existence on any Distribution Date. After all such Disputed Claims have been resolved or paid, and all Allowed Administrative Expense Claims have been paid, any balance of the Reserve Account shall be paid in accordance with Section 2.03.

**Section 3.02**     **Continued Existence.**

On the Effective Date, the Debtor shall operate only for the purposes of carrying-out this Plan, and shall cease all regular operations. After substantial completion of Plan requirements, Debtor shall notify the Bankruptcy Court. After such filing, the Debtor shall be deemed dissolved for all purposes without the necessity for other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith; provided that, in its sole discretion, the Debtor may (but shall not be required to) file with the Office of the Secretary of State for the applicable certificate of dissolution.

**Section 3.03**     **Further Authorization.**

The Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary to carry out and further the intentions and purposes, and give full effect to the provisions of the Plan.

**Section 3.04**     **U.S. Trustee Fees.**

All fees payable pursuant to chapter 123 of title 28, United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date. Any statutory fees accruing after the Effective Date shall be paid prior to any final Distribution.

**Section 3.05**        **Cancellation of Notes, Bonds, Instruments, Debentures and Equity Interests.**

Unless previously cancelled or assumed and assigned by the Sale Order, on the Effective Date, except as otherwise provided in this Plan, the Sale Order or the Confirmation Order, (a) the Revenue Bonds and any other notes, bonds, indentures or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtor shall be cancelled and extinguished, (b) the obligations of the Debtor under any agreements, documents, indentures or certificates of designation governing the Bonds and any other notes, bonds, indentures or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtor that are impaired under this Plan shall be, and are hereby, discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or any requirement of further action, vote or other approval or authorization by the Interest holders, officers or directors of the Debtor or by any other Person, and (c) the Interests shall be cancelled (and all securities convertible or exercisable for or evidencing any other right in or with respect to the Interests) without any conversion thereof or distribution with respect thereto.

Notwithstanding the foregoing or any other contrary term or provision provided in the Plan, (a) the discharge of the obligations of the Debtor under the Bonds, any bonds, notes, indentures or other instruments, documents or agreements, and (b) the Revenue Bond Indenture shall continue in effect solely for the purposes of (i) maintaining all of the protections the Revenue Bond Indenture Trustee enjoys as against the holders of the Revenue Bonds including but not limited to its lien rights under Section 8.11 of the Indenture; and (ii) allowing and preserving the rights of the Revenue Bond Indenture Trustee to make Distributions in satisfaction of Allowed Revenue Bond Claims, but in all cases subject to the terms and conditions of the Revenue Bond Indenture. As of the Effective Date, the Revenue Bonds shall be surrendered to the Revenue Bond Indenture Trustee in accordance with the terms of the Revenue Bond Indenture. All surrendered and cancelled Revenue Bonds held by the Revenue Bond Indenture Trustee shall be disposed of in accordance with the applicable terms and conditions of the Revenue Bond Indenture.

**Section 3.06**        **Notice of Effective Date.**

On or before the third (3rd) Business Day following the Effective Date, the Debtor shall electronically file with the Court a notice of occurrence of the Effective Date and provide such notice to the Revenue Bond Trustee, and Otter Tail County via electronic mail.

## ARTICLE IV

## DEBTOR'S LIQUIDATION DUTIES

**Section 4.01**        **Debtor as Liquidator.**

The Debtor shall be responsible in all actions to complete this Plan.

**Section 4.02**             <u>Compensation of Debtor.</u>

Any remaining officers and employees of Debtor shall receive compensation in the form of wages or salary for services rendered in an amount equal to the their usual and customary hourly rate then in effect, multiplied by the hours they expend in fulfillment of their duties on behalf of the Debtor. The Debtor shall also be reimbursed for any expenses reasonably incurred in the performance of its duties. Payment of such compensation and expense reimbursement shall be made on a bi-weekly basis before Distributions are made.

**Section 4.03**             <u>Preservation of Causes of Action / Debtor's Belief that there are no Causes of Action to Pursue.</u>

Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, and subject to the terms of the Plan, the Debtor and the Estate shall retain all Causes of Action that the Debtor has the right to assert immediately prior to the Effective Date.

Notwithstanding this provision preserving Causes of Action, the Debtor has conducted a reasonable investigation, and is not aware at this time of any Causes of Action. The Debtor does not intend to conduct any further investigation to identify any Causes of Action. The Debtor shall not be authorized to pursue any Causes of Action, other than objecting to a Disputed Claim. If the Debtor becomes aware of any Causes of Action, it must obtain approval from the Court before investigating or pursuing such any Causes of Action.

**Section 4.04**             <u>General Powers.</u>

The powers and authorities of the Debtor include, without limitation: (a) collecting and liquidating the Liquidation Assets; (b) making Distributions; (c) objecting to Claims, including seeking subordination thereof, and asserting defenses, counterclaims or setoffs thereto; (d) settling Disputed Claims; (e) filing tax returns for the Debtor; (f) hiring professionals to assist in carrying out its duties; (g) opening and closing bank accounts and (j) taking all action necessary, appropriate or convenient to carry out the duties imposed under the Plan, or under applicable law, and otherwise fulfilling the purpose of the Plan and safeguarding the interests of holders of Claims and Interests.

**Section 4.05**             <u>Duties of the Debtor.</u>

The Debtor shall exercise such of the rights and powers vested in it in by the Plan and use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of his own affairs.

**Section 4.06**          **Retention of Professionals; Compensation.**

The Debtor may employ one or more professionals or agents to assist with its duties and may pay the agents or professionals a reasonable fee in consideration for such assistance. Such professionals may include, without limitation, the professionals retained by the Debtor prior to the Effective Date. Such professionals shall not be required to file applications for allowance and payment of compensation and reimbursement of expenses with the Bankruptcy Court. Any such agent or professional employed in accordance with this subsection shall be employed at the will of the Debtor and may be terminated or replaced by the Debtor at any time, with or without cause.

**Section 4.07**          **Limitation of Liability of Debtor.**

Debtor shall maintain its D&O policy until this Plan is substantially complete.

The Debtor shall have no duty other than to the holders of Claims, and only to the extent of the Allowed Claims, in the management of the Liquidation Assets. The Debtor, and its respective officers, directors, professionals, members, agents and representatives shall not be liable except for the performance of duties and obligations specifically set forth in the Plan and no implied covenants or obligations shall be read into the Plan against the Debtor, and its respective officers, directors, professionals, members, agents and representatives. The Debtor shall not be liable for any error of judgment made in good faith or made by an agent, professional, or attorney-in-fact of the Debtor, unless it shall be proven that the Debtor was grossly negligent in ascertaining the pertinent facts or performing any duty or obligation.

**Section 4.08**          **Reliance by Debtor.**

Except as otherwise provided herein:

(a)     the Debtor may rely, and shall be protected in acting upon, any resolution, certificate, statement, installment, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by him to be genuine and to have been signed or presented by the proper party or parties except as otherwise provided in the Plan;

(b)     the Debtor shall not be liable for any action reasonably taken or not taken by it in accordance with the advice of a professional retained by the Debtor.

**Section 4.09**          **Reporting and Notice.**

Monthly, beginning on the first Business Day of the first month anniversary of the Effective Date, the Debtor shall file a report with the Court as to its assets, liabilities and activities during the prior month including a statement of all amounts paid for compensation of professionals and the Debtor.

The Debtor shall furnish tax information to the holders of Class One Unsecured Claims and Class Two Interests as required by law. As soon as practicable after substantial completion

of the Plan, the Debtor shall provide to the holders of Claims a final account and report of the liquidation.

## ARTICLE V

## PROVISIONS REGARDING DISTRIBUTIONS

**Section 5.01          No Distribution In Excess of Allowed Amount of Claim.**

Notwithstanding anything to the contrary herein, no holder of an Allowed Claim will receive, in respect of such Claim, Distributions under this Plan in excess of the Allowed Amount of such Claim.  No distributions shall be made to parties that do not have Allowed Claims.

**Section 5.02          Time and Method of Distributions.**

The Debtor will make the Distributions to holders of Allowed Claims required under the Plan.  Whenever any Distribution to be made under the Plan is due on a day other than a Business Day, such Distribution shall be made, without interest, on the immediately succeeding Business Day, but any such Distribution will have been deemed to have been made on the date due. The Debtor shall continue to make Distributions out of the Liquidation Account up to and including the Final Distribution Date, on which date it will make the final Distribution under this Plan. Notwithstanding any contrary provisions herein Distributions on account of Revenue Bond Claims shall be made to the Revenue Bond Indenture Trustee for further Distribution to holders of the Revenue Bonds in accordance with and subject to the terms and provision of the Revenue Bond Indenture.

**Section 5.03          Means of Payment.**

All payments made pursuant to this Plan shall be in Cash and by any means reasonably selected by the Debtor, including check or wire transfer.

**Section 5.04          Disputed Claims.**

No payments or other Distribution of any kind will be made on account of any Claim until such Claim becomes an Allowed Claim and then only to the extent that such Claim is an Allowed Claim. As required by Section 3.01, the Debtor shall establish and maintain a amount in the Reserve Account sufficient to pay Disputed Claims that may subsequently become Allowed Claims, as determined by the Debtor in its sole discretion. To the extent a Disputed Claim becomes an Allowed Claim after any initial Distributions, a Distribution shall be made in respect of such Allowed Claim within 30 days after such claim becomes an Allowed Claim. Notwithstanding the foregoing, any holder of both an Allowed Claim(s) and a Disputed Claim(s) may receive the appropriate payment or Distribution on the Allowed Claim(s), although, except as otherwise agreed by the Debtor in its sole discretion, no payment or distribution shall be made on the Disputed Claim(s) until such dispute is resolved by settlement or Final Order.

**Section 5.05          Distribution Record Date; Delivery of Distributions.**

Subject to the provisions of Bankruptcy Rule 2002(g), and except as otherwise provided

herein, the Debtor shall not have any obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date and will be entitled for all purposes herein to recognize and distribute proceeds, securities, property, notices and other documents only to those holders of Allowed Claims who are holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date. Debtor shall be entitled to recognize and deal for all purposes under this Plan with only those Claim holders stated on the official Claims register, or in the Debtor's books and records, as of the close of business on the Distribution Record Date. The foregoing shall not apply to Revenue Bond Claims.

**Section 5.06**      **Fractional Dollars; *De Minimis* Distributions.**

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down. No payment shall be made on account of any Distribution less than fifty dollars ($50) with respect to any Allowed Claim unless a request therefor is made in writing to the Debtor of such payment on or before thirty (30) days after the Effective Date.

**Section 5.07**      **Undeliverable Distributions.**

**(a)**      **Holding of Undeliverable Distributions**

If any Distribution hereunder to any holder is returned as undeliverable, it shall be deposited into the Reserve Account, and no further Distributions shall be made to such holder unless and until the Debtor is notified in writing of such holder's then-current address. All entities ultimately receiving undeliverable Cash shall not be entitled to any interest or other accruals of any kind. Nothing contained in the Plan shall require the Debtor to locate any holder of an Allowed Claim.

**(b)**      **Failure to Claim Undeliverable Distributions**

Any holder of an Allowed Claim that does not assert its rights pursuant to the Plan to receive a Distribution within thirty (30) days from and after the date such Distribution is returned as undeliverable shall have such holder's Claim discharged and shall be forever barred from asserting any such Claim against the Debtor.

**Section 5.08**      **Setoff.**

The Debtor may, in accordance with the provisions of the Plan, Section 553 of the Bankruptcy Code and applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant to this Plan on account of such Claim (before any Distribution is made on account of such Claim), the Claims, rights and Causes of Action of any nature that the Debtor may hold against the holder of such Allowed Claim and not released or extinguished by this Plan

.

**Section 5.09**     **Withholding Taxes.**

Any federal or state withholding taxes or other amounts required to be withheld under any applicable law will be deducted and withheld from any Distributions made pursuant to this Plan. All holders of Claims will be required to provide to the Debtor any information necessary to effect the withholding of such taxes. Notwithstanding the foregoing, each holder of an Allowed Claim that is to receive a Distribution hereunder will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit on account of such Distribution, including withholding tax obligations in respect of in-kind (non-Cash) Distributions. Any party issuing an instrument or making an in-kind (non-Cash) Distribution under this Plan has the right, but not the obligation, to refrain from making such Distribution until the Person to which the Distribution is to be made has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligation.

## ARTICLE VI

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

On the Effective Date, all executory contracts and unexpired leases shall be deemed rejected, except for those executory contracts and unexpired leases that were previously assumed or rejected previously in the Bankruptcy Case or through the Sale Order.

All Allowed Claims arising from the rejection of executory contracts and unexpired leases shall be deemed to be Class One Unsecured Claims. The Confirmation Order shall function as a Final Order authorizing the rejection, as of the Effective Date, of all executory contracts and unexpired leases not previously rejected or assumed. Any Person asserting a Claim arising from the rejection of an executory contract or unexpired lease, who has not previously received notice of such rejection or the Sale Order, must file a proof of Claim with the Clerk of the Court within thirty (30) days after the Confirmation Date and any such Person who fails to timely file such a Claim shall be forever barred, estopped, and enjoined from asserting such Claim and from receiving any property of the Estate or the Debtor on account of such Claim.

## ARTICLE VII

### CONDITIONS PRECEDENT

**Section 7.01**     **Conditions to Effective Date.**

Each of the following conditions must occur and be satisfied on or before the Effective Date for the Plan to be effective on the Effective Date:

(a)     The Court shall have entered the Confirmation Order, in form and substance reasonably acceptable to the Debtor, and the Confirmation Order shall have become a Final Order;

(b)     Any conditions to the Effective Date shall have been satisfied or waived by the party entitled to do so;

(c)      All other actions and documents necessary to implement the Plan as of the Effective Date shall have been effected and/or duly executed and delivered; and

(d)      All payments required to be paid to the County and the Revenue Bond Trustee under the terms of the Stipulation and Sale Order shall have been paid.

**Section 7.02**      **Waiver of Conditions.**

The Debtor may waive the conditions to the effectiveness of this Plan as set forth in this Article VII, except for condition (d).

**Section 7.03**      **Effect of Non-Occurrence of the Effective Date.**

If the Confirmation Order is vacated, this Plan shall be null and void in all respects and nothing contained in this Plan shall: (1) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor; (2) prejudice in any manner the rights of the Debtor or any other party; or (3) constitute an admission, acknowledgment, offer or, undertaking by the Plan Proponent in any respect.

## ARTICLE VIII

## EFFECT OF CONFIRMATION

**Section 8.01**      **Binding Effect.**

The Plan shall be legally binding upon and inure to the benefit of the Debtor, the Estate, the holders of Claims, the holders of Interests, and their respective successors and assigns.

**Section 8.02**      **Release by the Debtor of AgStar, NMF, Revenue Bondholders and Otter Tail County.**

For good and valuable consideration, on the Effective Date and except as otherwise provided herein, the Debtor, the Estate and any person seeking to exercise the rights of the Estate, including, without limitation, any successor to the Debtor or any Estate representative appointed or selected pursuant to section 1123 of the Bankruptcy Code, does hereby release AgStar, NMF, the Revenue Bondholders, the Revenue Bond Indenture Trustee, and Otter Tail County from any and all Claims and Causes of Action, including, without limitation, any Avoidance Actions that the Debtor or its Estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person or entity, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place before the Effective Date.

**Section 8.03**            <u>Injunction.</u>

Except as otherwise expressly provided for in the Plan or the Confirmation Order and to the fullest extent authorized or provided by the Bankruptcy Code, and provided that the Effective Date occurs, the entry of the Confirmation Order will permanently enjoin all Persons that have held, currently hold or may hold a Claim or other debt or liability that is subject to the Plan from taking any of the following actions in respect of such Claim, debt or liability: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor; (b) enforcing, levying, attaching, collecting or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree or order against the Debtor; (c) creating, perfecting or enforcing in any manner directly or indirectly, any lien or encumbrance of any kind against the Debtor; (d) asserting any setoff or offset of any kind, directly or indirectly, against any debt, liability or obligation due to the Debtor; and (e) proceeding in any manner in any place whatsoever, including employing any process, that does not conform to or comply with or is inconsistent with the provisions of the Plan.

**Section 8.04**            <u>Exculpation.</u>

To the fullest extent authorized or provided by the Bankruptcy Code, and provided that the Effective Date occurs, upon the Effective Date and subject to Section 8.03 of the Plan, neither the Revenue Bond Indenture Trustee, the County, AgStar, NMF, the Debtor's professionals, nor any of their respective officers, directors, members, attorneys or other advisors (including financial advisors)(collectively, the "**Exculpated Parties**") shall have or incur liability for any claims, obligations, rights, or Causes of Action for any act or omission in connection with, relating to, or arising out of, the Debtor's Chapter 11 Case, including, without limitation, the sale of substantially all of the Debtor's assets, or the Plan, the negotiation, formulation, and preparation of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or of the property to be distributed under the Plan, except for acts or omission which constitute willful misconduct or gross negligence and provided, further, that (i) no Exculpated Party shall be released from (a) its express obligations, if any, under this Plan, or under any other document or agreement between any Exculpated Parties (excluding the Debtor), or (b) from any claims, liabilities or obligations related to transactions, acts and omissions unrelated to (1) the Chapter 11 Case, or (2) with respect to any general bank depository or similar bank service obligations owed by any Exculpated Party to any other person or third party, and (ii) nothing in this Section 8.04 shall modify the rights of the Revenue Bond Trustee under the Revenue Bond Indenture.

<u>**ARTICLE IX**</u>

**RETENTION OF JURISDICTION**

**Section 9.01**            <u>Jurisdiction of the Bankruptcy Court.</u>

After the Confirmation Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Debtor, the Estate, and the Chapter 11 Case until such Chapter 11 Case is closed, for the following purposes:

**(a)** to hear and determine any and all pending or future proceedings regarding the allowance, disallowance or subordination of Claims or regarding the Debtor's and the Estate's rights of recoupment and/or setoff;

**(b)** to consider and act on the compromise and settlement of any Claim against the Estate; provided, however, that there shall be no requirement that the Debtor seek Court approval of compromises and settlements except as provided herein;

**(c)** to hear and determine all pending or future controversies, suits, and disputes that may arise under the Plan, including controversies arising in connection with the interpretation or construction of the Plan or any documents intended to implement the provisions of the Plan;

**(d)** to hear and determine any and all applications of professional persons for the allowance of compensation and reimbursement of expenses incurred prior to or on the Confirmation Date;

**(e)** to consider and rule upon any proposed modifications of the Plan;

**(f)** to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in any order of the Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan and to implement and effectuate the Plan;

**(g)** to determine such other matters that may be provided for in the Confirmation Order or other orders of the Court, all as authorized under the provisions of the Bankruptcy Code or any other applicable law;

**(h)** to enforce all orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Case;

**(i)** to hear and determine all applications, adversary proceedings, disputes, controversies and contested matters arising under Chapter 11 of the Bankruptcy Code or arising in or related to the Chapter 11 Case;

**(j)** to hear and determine disputes and controversies regarding title to property of the Estate or the Debtor;

**(k)** to issue such orders as may be necessary or appropriate in aid of Confirmation, and to facilitate consummation of the Plan, including orders requiring parties to fulfill their obligations as specified in the Plan; and

**(l)** to consider and act upon any Claim or Cause of Action by or against the Debtor, the Revenue Bond Trustee, or their respective agents, attorneys, financial advisers, or representatives, arising under or in connection with the Chapter 11 Case or the Plan.

## ARTICLE X

## MISCELLANEOUS

**Section 10.01**        **Notices**.

Any notice required or permitted to be provided to the Debtor under the Plan shall be in writing and served by overnight courier service or by certified mail, return receipt requested, addressed as follows:

> **The Debtor**
>
> Mackall, Crounse, & Moore, PLC
> c/o Timothy D. Moratzka, Esq.
> 111 Marquette Avenue, Suite 1400
> Minneapolis, MN 55402
> Phone: (612) 305-1400
> Fax: (612) 305-1414

**Section 10.02**        **Governing Law**.

Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and the Bankruptcy Rules, the laws of the State of Minnesota shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

**Section 10.03**        **Term of Injunctions or Stays**.

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under Sections 105(a) or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date shall continue in full force and effect until the Final Distribution Date and the Estate, and the Debtor shall be entitled to all of the protections afforded thereby. The Court shall have the power to grant such additional and supplemental stays as may be necessary or appropriate to protect and preserve the Liquidation Assets or to permit the just and orderly administration of the Estate. The Liquidation Assets shall remain property of the Estate until distributed in accordance with this Plan, and no entity shall at any time have any claim to or interest in any asset of the Estate except to the extent that such entity is the holder of an Allowed Claim entitled to Distributions under this Plan. On and after the Effective Date, the provisions of the Plan shall be binding upon the Debtor, the Estate, all holders of Claims, all holders of Interests, and all other parties in interest in the Chapter 11 Case, in each case whether or not such entities hold Claims which are impaired and whether or not such entities have accepted the Plan.

**Section 10.04**            **Closing of the Chapter 11 Case.**

When all Disputed Claims filed against the Debtor have become Allowed Claims or have been disallowed by Final Order, and all remaining assets of the Debtor have been liquidated and converted into Cash (other than those assets abandoned by the Debtor, and such Cash has been Distributed in accordance with this Plan, or at such earlier time as the Debtor deems appropriate, the Estate shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**Section 10.05**            **Modifications and Amendments.**

The Debtor reserves the right to alter, amend, or modify the Plan as contemplated by Section 1127 of the Bankruptcy Code. The Plan may be modified, before or after Confirmation, without notice or hearing, or on such notice and hearing as the Court deems appropriate, if the Court finds that the proposed modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard to the proposed modification. Without limiting the foregoing, the Plan otherwise may be modified after notice and hearing. In the event of any modification at or before Confirmation, any votes in favor of the Plan shall be deemed to be votes in favor of the Plan as modified, unless the Court finds that the proposed modification materially and adversely affects the rights of all or certain creditors that cast votes.

**Section 10.06**            **Exclusive Right to Modify Plan.**

The Debtor shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to, or modifications of, the Plan until and including the Confirmation Date.

**Section 10.07**            **Effectuating Documents; Further Transactions.**

The Debtor shall be authorized to execute, deliver, file, and/or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**Section 10.08**            **Withdrawal or Revocation.**

The Debtor may withdraw or revoke this Plan at any time prior to the Confirmation Date. If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

**Section 10.09**      **Severability**.

      In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of this Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered of interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Section 10.10**      **Headings**.

      Headings are used in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

Dated: <u>June 1, 2011</u>                    MACKALL, CROUNSE & MOORE, PLC

                                     By: <u>/e/ Mychal A. Bruggeman</u>
                                     Mychal A. Bruggeman (Atty No 345489)
                                     Timothy D. Moratzka (Atty No. 75036)
                                     Mychal A. Bruggeman (Atty No 345489)
                                     1400 AT&T Tower
                                     901 Marquette Ave
                                     Minneapolis, Minnesota  55402
                                     (612) 305-1400

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: Otter Tail Ag Enterprises, LLC, <br><br> Debtor. | Case No. 09-61250-DDO <br> Chapter 11 |

## SIGNATURE DECLARATION

    I. Anthony Hicks, declare under penalty of perjury that I am the Chief Executive Officer of Otter Tail Ag Enterprises, LLC ("OTAE"), make the following declarations under penalty of perjury:

- The information that I have given my attorney in the electronically filed Debtor's 3rd Amended Proposed Chapter 11 Plan of Liquidation is true and correct.

Dated: _June 1, 2011_

OTTERTAIL AG ENTERPRISES, LLC

By_____
    Anthony Hicks
    Chief Executive Officer

Dated: June 1, 2011_____

MACKALL, CROUNSE & MOORE, PLC

By: /e/ Mychal A. Bruggeman_____
Mychal A. Bruggeman (Atty No 345489)
Timothy D. Moratzka (Atty No. 75036)
1400 AT&T Tower
901 Marquette Ave
Minneapolis, Minnesota 55402
(612) 305-1400

**ATTORNEYS FOR DEBTOR**

## CERTIFICATE OF SERVICE

On June 1, 2011, this document was served on parties who receive electronic notice through CM/ECF.

By: /e/ Mychal A. Bruggeman
Mychal A. Bruggeman (Atty No. 345489)

1382350.1-MAB